THE CITY OF NEW YORK, Appellant, *v.* THE HUDSON AND MANHATTAN RAILROAD COMPANY, Respondent.

New York (city of) — subway railroad — right of railroad to construct and maintain exits from tunnel to surface of street — railroad having built such exits with consent of municipal authorities if city requires removal it must bear the expense.

The defendant received from the authorities of the city of New York pursuant to authority delegated to it by the state the right to construct and maintain exits from its tunnel at the surface, to be located in accordance with certain requirements, and such exits were constructed in accordance therewith. Thereafter the city required that they should be removed and relocated as a matter of public convenience. This action is brought by the city to recover the expense of such removal. *Held*, that such location of the exits was of the substance of the franchise and was so specific that it became a matter between the state and the defendant, even though a proper regard to the public convenience and safety dictated their removal. The local authorities have consented without limitation to the exact location and such location is not an incidental act. The state alone may say, or authorize the city to say, when the exits as they were first placed become an unreasonable interference with the free use of the streets for the usual street purposes; hence the city should bear the expense of relocation as an incident to widening the street.

*City of New York* v. *Hudson & Manhattan R. R. Co.*, 188 App. Div. 294, affirmed.

(Argued April 24, 1920; decided June 1, 1920.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial

department, entered June 24, 1919, in favor of defendant upon an order unanimously dismissing the plaintiff's claim upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

The nature of the controversy and the facts, so far as material, are stated in the opinion.

*William P. Burr*, Corporation Counsel (*John F. O'Brien* of counsel), for appellant. Plaintiff retained title to the fee of the streets in trust for ordinary street uses. Defendant's easement to construct and maintain exits from its stations is subordinate to plaintiff's title to the streets for the usual purposes of travel. There was no legislative intention shown and no power delegated to the rapid transit commissioners or to the municipal authorities by the Rapid Transit Act to alienate the title to any part of the streets, or to subordinate plaintiff's title in trust for ordinary street use by vehicles or pedestrians. (L. 1901, ch. 466, § 976; *Lincoln S. D. Co.* v. *City of New York*, 210 N. Y. 34; *New York M. & T. Co.* v. *Shea*, 30 App. Div. 266; *Reis* v. *City of New York*, 113 App. Div. 464; 188 N. Y. 58.) The power delegated by the legislature to the board of estimate and apportionment by section 442 of the charter to "widen, straighten, extend, alter and close existing streets and courtyards and to change the grade of existing streets" includes, by necessary implication, the power to compel public service corporations occupying the streets to conform their structures at their own expense to the altered width or grade of the roadways of such streets. This latter implied power is so essential to the exercise of the specially delegated power to alter and widen the roadways of Fourteenth and Twenty-third streets as plainly to appear to be within the intention of the legislature. (*Matter of Deering*, 93 N. Y. 361; *B. E. Ry. Co.* v. *City of Brooklyn*, 2 App. Div. 98; *Dry Dock, etc., R. R. Co.* v. *Mayor, etc.*, 55 Barb. 298; *N. Y. Steam Co.* v. *Foundation Co.*, 123 App. Div. 263:

*People ex rel. City of Olean* v. *W. N. Y., etc., Co.*, 214 N. Y. 526; *Stern* v. *Int. Ry. Co.*, 220 N. Y. 284; *N. Y. Inter Urban Water Co.* v. *City of Mt. Vernon*, 185 App. Div. 305; *Creem Co.* v. *City of New York*, 188 App. Div. 169.)   Neither section 32 of the Rapid Transit Act (L. 1891, ch. 4; amd. L. 1902, ch. 584) nor the extension certificate of February 2, 1905, as modified by the certificate of February 28, 1907, created any extraordinary contract in the sense that defendant acquired rights superior to those of the public for street uses.   (*Radcliff's Case*, 4 N. Y. 195; *Matter of Borup*, 182 N. Y. 222; *Matter of Deering*, 93 N. Y. 361; *Moffat* v. *City of Denver*, 143 Pac. Rep. 577; *Portland G. & C. Co.* v. *Giebisch*, 165 Pac. Rep. 1004; *N. O. Gas Light Co.* v. *Drainage Comm.*, 197 U. S. 445; *D. D., etc., R. R. Co.* v. *Mayor, etc.*, 55 Barb. 298; *B. E. Ry. Co.* v. *City of Brooklyn*, 2 App. Div. 98; *People ex rel. City of Geneva* v. *G. W., etc., Co.*, 112 App. Div. 581; 186 N. Y. 516; *Chace Trucking Co.* v. *R. L. & R. R. Co.*, 225 N. Y. 435.)

*Harold W. Bissell* and *Lansing P. Reed* for respondent. The police power of the state with respect to the removal and relocation of defendant's structures could not be exercised without compensation to defendant.   (*People* v. *O'Brien*, 111 N. Y. 1; *C., B. & Q. Ry. Co.* v. *Drainage Comrs.*, 200 U. S. 561; *Butchers' Union Co.* v. *Crescent City Co.*, 111 U. S. 746; *Health Dept.* v. *Rector, etc.*, 145 N. Y. 32; *Lord* v. *E. L. Assur. Society*, 194 N. Y. 225; *Davis* v. *Mayor*, 14 N. Y. 506; *Richards* v. *Washington Terminal Co.*, 233 U. S. 546; *Chace Trucking Co.* v. *R. L. & R. R. Co.*, 225 N. Y. 435; *People* v. *N. Y. Rys. Co.*, 217 N. Y. 310; *Stillwater Water Co.* v. *City of Stillwater*, 50 Minn. 498; *N. O. Gas Light Co.* v. *Drainage Comm.*, 197 U. S. 453.)   The police power of the state with respect to the removal and relocation of defendant's structures was not delegated to the board of estimate and apportionment or other municipal authorities.

(*People* v. *N. Y. Rys. Co.*, 217 N. Y. 310; *People* v.
*W. N. Y. & Penn. Traction Co.*, 214 N. Y. 526; *Wilcox* v.
*McClellan*, 185 N. Y. 9; *City of New York* v. *Bryan*,
196 N. Y. 158.)

POUND, J.   Defendant received from the board of
rapid transit railroad commissioners of the city of New
York, pursuant to authority delegated to it by the state,
a certificate to construct and operate its subway under
certain streets, including Sixth avenue; also in connection
therewith " to construct and maintain exits from the
tunnel at the surface of  *  *  *  Fourteenth Street
near the westerly side of Sixth Avenue, Twenty-third
Street near the westerly side of Sixth Avenue,  *  *  *
provided that the same shall be constructed in substan-
tial accordance with the drawings or plans submitted to
the Board by the said Company."   The city authorities
consented thereto and the defendant has accepted and
performed the conditions of the grant.   It constructed
such exits with covered shelters known as kiosks, one on
the northerly sidewalk and one on the southerly sidewalk
of each street, which serve both as exits and entrances
to the subway stations below.   Some years thereafter
both of the streets and the roadways thereof were widened,
with the result that the kiosks were left standing within
the new lines of the roadway.   The controversy arose
over the demand of the city that defendant should remove
its kiosks from the roadway and relocate them on the
new sidewalks at its own expense.   The defendant
maintained that the location thereof could be changed
only with its consent.   It was agreed that the city should
reconstruct the kiosks and pay the expense in the first
instance, leaving the question of who should bear the
expense to be determined in this action.   The city claims
therefor the sum of $27,514.43.   On the agreed state-
ment of facts, the Appellate Division gave judgment for
the defendant on the ground, as stated in the opinion,

that there was a definite contract, a consent irrevocable in its nature, and a location by the public authorities, such as to constitute property in defendant which could not be taken from it without the just compensation required by the Constitution *save in reliance upon the police power, and that no delegation of police power, sufficient to authorize the city to compel the relocation at the expense of the defendant was shown:* The correct rule is thus suggested that " the state might relocate them in the exercise of the police power, but not the municipality." (CARDOZO, J., in *Stern* v. *Internat. Ry. Co.,* 220 N. Y. 284, 296.)

The question is as to the regulative power of the local authorities on the facts before us. Were the kiosks, as first located, mere incidents or appurtenances of defendant's franchise which became encroachments when the roadway was widened and which the city might, therefore, order out of the streets under its general power to regulate their use and to preserve the safety and welfare of the people within the city? If so, then the proper city authorities might compel their removal when they became an obstruction to the public use. (*Stern* v. *Internat. Ry. Co., supra.*) But, on the other hand, was their location of the substance of the franchise? Was such location so specific that it became a matter between the state and the defendant? If so, even though a proper regard to the public convenience and safety dictated their removal, the state alone could command the defendant to make the changes or authorize the city to act. (*People ex rel. City of New York* v. *N. Y. Railways Co.,* 217 N. Y. 310.)

I think that the latter contention must prevail. The certificate issued by the board of rapid transit railroad commissioners to defendant, by the terms of the statute, became a contract between the city and the defendant on condition that the consent of the local authorities having control of the streets be first obtained. The local author-

ities could either unqualifiedly approve or disapprove the same, but their approval is free from all limitations other than those contained in the Rapid Transit Act (L. 1891, ch. 4, as amended) or the Constitution.

The city concedes that the defendant's franchise thus acted upon constitutes a contract, but it urges that the original location of the kiosks is not so fixed as to shift the risk of change from the company; that, therefore, defendant should be required, when directed by the municipal authorities, to make such changes therein as public convenience or security from time to time requires, at its own cost and charge. (*Matter of Deering*, 93 N. Y. 361.)

This contention might prevail if the right to build kiosks on the sidewalk were so vague and general as to create no right to any fixed location and were made subject to such reasonable regulations in regard thereto as might from time to time be prescribed. This court has, however, recently gone to the extent of holding that the mere practical location of railroad tracks in the streets under the general terms of a franchise precluded the city from changing such location on grounds of public safety and convenience, in the absence of a clear delegation of specific authority, because the right to locate the tracks came from the state. (*People ex rel. City of New York* v. *N. Y. Railways Co., supra.*) One may obtain from the state, with the consent of the city, a right to such an exclusive use of a street as necessarily excludes or limits the power of the municipality thereafter to interfere. The question here is whether the city agreed, by fair inference, as one of the terms of its contract with the defendant, that the latter should not be disturbed in the location of its kiosks. (*New Orleans Gas Light Co.* v. *Drainage Commission*, 197 U. S. 453.)

The city says that its right to widen and alter streets is paramount to the right asserted by the defendant. But the city may not take private property in widening and

altering streets without compensation therefor. Defendant has a property right, a right arising out of contract, to maintain its kiosks where they were first located. That right is subject to the police power of the state which needs not now to be delimited. Every reason of public policy requires that grants of street rights be held subject to such reasonable regulations as the public safety and convenience may require, but suffice it to say that it will not now be assumed, by " avoidable implication," that the city has obtained from the state the authority that it now asserts.

The implication that the city may direct the defendant to remove and reconstruct its kiosks is not only avoidable; it is impossible. The local authorities have consented without limitation to the exact location and the location of such permanent and costly structures is not an incidental act like the temporary location of trolley poles in the middle of the street, which afterwards become dangerous, or the laying of water or gas pipes somewhere below the surface, or the stringing of wires and overhead structures. (*Chace Trucking Co.* v. *Richmond Light & R. R. Co.*, 225 N. Y. 435.) The state alone may say, or authorize the city to say, when the exits as they were first placed become an unreasonable interference with the free use of the streets for the usual street purposes. (*Village of Carthage* v. *Central N. Y. Tel. & Tel. Co.*, 185 N. Y. 448.) As an incident to widening the street, the city should bear the expense of relocation.

The judgment appealed from should, therefore, be affirmed, without costs.

HISCOCK, Ch. J., COLLIN, McLAUGHLIN, ANDREWS and ELKUS, JJ., concur; HOGAN, J., not voting.

Judgment affirmed.