Postal Telegraph-Cable Company, Plaintiff, *v.* Depew and Lancaster Light, Power and Conduit Company, Defendant.

Supreme Court, Erie County, May 12, 1927.

Gas and electricity — liability for interference with telegraph line — plaintiff established telegraph line pursuant to Revised Statutes of the United States, chap. 230, § 5263, in 1890, along west side of street in town of Hamburg, Erie county — defendant light and power company in 1925, pursuant to franchise, erected poles in such manner as to cripple plaintiff's service — defendant refused to relocate plaintiff's poles to obviate interference — plaintiff's right to occupy space is valuable property right and defendant's refusal to relocate poles was unreasonable interference therewith — plaintiff entitled to be reimbursed for relocation of poles.

Plaintiff, a telegraph cable corporation, pursuant to the provisions of section 5263, chapter 230, of the Revised Statutes of the United States, constructed in 1890, and has since maintained, a telegraph line along the west side of South Park avenue in the town of Hamburg, Erie county. The line occupied the same location from the time of its construction until 1925, when the defendant power and light company, pursuant to a franchise obtained from the town board of the town of Hamburg, erected its poles in such a manner as would have seriously interfered with plaintiff's line and with its service. Plaintiff, on becoming cognizant of the situation, made a demand upon the defendant to relocate plaintiff's poles so that the interference would be minimized or obviated. Defendant refused, and in order to protect its service and lines from being seriously crippled, plaintiff relocated the poles at its own expense.

Plaintiff, by virtue of the act of Congress, had a right to occupy the space taken up by its line, and being the senior in occupancy of the location, it cannot be asked to surrender to the defendant what has been held to be a property right of value, without compensation from said defendant. Notwithstanding the fact that defendant is a public service corporation, whose lines were located by public authority, defendant's refusal to relocate plaintiff's line, under the circumstances, was an unreasonable interference with plaintiff's property rights, for which plaintiff is entitled to be reimbursed.

Action by the plaintiff for the purpose of securing money damages, based on an alleged interference by the defendant with certain property rights of the plaintiff, which alleged interference, it is claimed, brought about the damage for which judgment is

demanded. The trial was commenced before a court and jury, but while testimony was being taken the parties stipulated to waive the trial by jury.

*James O. Moore,* for the plaintiff.

*Philip A. Laing,* for the defendant.

HARRIS, J. The plaintiff is a telegraph and cable company formed for the purpose of transmitting communications by means of telegraph and cable throughout the world. Its system in the United States of America extends from the Atlantic coast to the Pacific coast, and by means of cable, such telegraph system is connected with Europe on the east and Asia on the west.

The Congress of the United States of America, by act of July 24, 1866, known as chapter 230 of the Revised Statutes of the United States, provided in section 5263 of such chapter as follows: " Any telegraph company now organized, or which may hereafter be organized, under the laws of any state, shall have the right to construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States which have been or may hereafter be declared such by law, and, over, under, or across the navigable streams or waters of the United States; but such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and waters, or interfere with the ordinary travel on such military or post roads." (See, also, 14 U. S. Stat. at Large, 221, chap. 230.) By its further act of March 1, 1884, Congress provided (23 U. S. Stat. at Large, 3, chap. 9): " All public roads and highways while kept up and maintained as such are hereby declared to be post routes."

Thereafter the plaintiff herein accepted the provisions of the act of July 24, 1866, above mentioned.

In the year 1890, pursuant to the provisions of such " Post Roads Act," the plaintiff constructed, and ever since has maintained, a telegraph line along the west side of South Park avenue, in the town of Hamburg, Erie county, and such line occupied the same position and location from the time of its construction until January, 1925. Such line is part of the main line of the plaintiff, which line, as has been said, extends from the Atlantic coast to the Pacific coast, and at such coasts connects with the cable lines of the plaintiff.

The defendant is a public service corporation maintaining power lines for the purpose of furnishing power to customers. Its customers are both individuals and public bodies. In 1920 the defendant obtained from the town board of the town of Hamburg

a franchise for the maintenance of power lines in various streets and highways in said town. Such franchise included the part of South Park avenue in which were located the lines of the plaintiff above referred to, which part is involved in this action. Prior to January 1, 1925, the defendant made contracts with such town board for lighting this part of South Park avenue, which contracts provided for seven street lights upon that portion of the highway. Such franchise and such construction required the building of a high-tension power line along such location. On application to the State Highway Commission for permission to locate and erect its poles, the defendant was directed by such Commission to locate and to erect such poles so that the face of the poles would be at a minimum of fourteen feet west of the west edge of the pavement. Such a location was to the advantage of the defendant herein, in that it was the most practical location for its purposes in placing and maintaining such poles.

At the time of its construction the plaintiff's line was built at a fixed distance from the edge of the old dirt driveway which then existed, and when the improved highway was constructed such improved highway did not follow exactly the lines of the old dirt road. Consequently, at the location in question, the plaintiff's telegraph line and the defendant's power line, as proposed for construction in January, 1925, would not have paralleled each other, and as a result, part of the way, the defendant's poles would have gone between the plaintiff's pole wires, and part of the way would have gone between the wires known as the field wires, that is, the wires located away from the poles. Such construction would have interfered seriously with the plaintiff's lines and with the service of the plaintiff, in that it would have made difficult the transfer of wires and the transposition of wires by the plaintiff, and in that the plaintiff's wires and, consequently, its service, would have been disarranged by the defendant's employees climbing the defendant's poles and by the leaning of the poles out of plumb (both these causing contacts with the plaintiff's wires) and by leakage from the defendant's high-powered lines, and in that such construction would have necessitated an increased number of attachments for the plaintiff's wires. Such interference at times would have seriously crippled the service of the plaintiff, not only at the point involved in such interference, but throughout a great part of its system. When the plaintiff became cognizant of the situation and the liability of damage, through interference, to its system and service, the plaintiff demanded that before the defendant proceed with the erection of its line and poles, such defendant should, at

38

the expense of the defendant, relocate the poles of the plaintiff so that such poles would be on a line with the proposed poles of the defendant, and that thus the interference above described be minimized or obviated altogether. This the defendant refused to do, and in order to protect its service and lines, the plaintiff made such changes of its poles and wires as it had demanded the defendant to do. Such work was done at an expense of $814.35, which is the amount stated in the demand for judgment in the complaint herein.

The court is satisfied as to the reasonable value of the work and material involved in such damages, so in deciding this lawsuit the court concerns itself only with the question as to whether or not the defendant is liable to the plaintiff for reimbursement for this expenditure.

The plaintiff had a right, by virtue of the acts of Congress above quoted, to occupy the space that it did occupy in South Park avenue, subject only to the reasonable regulation by the State of such use of South Park avenue for the traffic purposes of the public. It has been held that such a right is a property right of value. (*Los Angeles Gas & Electric Co.* v. *City of Los Angeles*, 241 Fed. 912; affd., *sub nom. City of Los Angeles* v. *Los Angeles Gas & Electric Corp.*, 251 U. S. 32; *Western Union Telegraph Co.* v. *Syracuse El. L. & Power Co.*, 178 N. Y. 325; *New York Steam Co.* v. *Foundation Co.*, 195 id. 43.)

The defendant conceded on the trial that the construction proposed by the defendant would have interfered with the plaintiff, but contends that as the defendant is a public service corporation and as the location of the defendant's lines was directed by public authority, the plaintiff must, without recourse, suffer any loss that comes to the plaintiff on account of such interference.

It is true that the State Highway Commission did order the defendant to assume the location in question. It is equally true that the right of the plaintiff to maintain its lines in the location referred to was subject to the police power of the State requiring a movement of such lines to another part of the road when it became necessary to do so to open more fully the road for public traffic purposes. (*Los Angeles Gas & Electric Co.* v. *City of Los Angeles, supra; Western Union Telegraph Co.* v. *Syracuse El. L. & Power Co., supra.*) If the State had required this, then the plaintiff would have been without remedy for its property loss. But this is not a controversy between the public authorities and the plaintiff as to the opening of the road for the ordinary purposes of traffic. Here we have the situation of two public service corporations, each having a right to maintain its lines along South Park avenue

in the town of Hamburg.   Although each is for the public service and performs duties to the public, in the last analysis, financial gain of such a corporation, when there is a gain, inures to the benefit of the stockholders of the corporation and to the advantage of the users of the service of such corporation; and, on the other hand, financial loss of such a corporation is borne either by the stockholders of the corporation or by the users of its service in the way of increased rates.   So it occurs to this court that the question really is: Which of these service corporations, with its group of stockholders and consumers, should bear the loss brought upon the plaintiff by the construction of the defendant's lines.   If the defendant, through the exercise of the right of eminent domain, had desired to cross a piece of property, the fee of which was in the plaintiff, in a proper case the courts would have granted the right so to cross, but would have ordered the defendant to reimburse the plaintiff for the property of the plaintiff taken for the purpose of making such crossing.   There appears to be no sound reason why a similar rule of reimbursement should not be invoked in the action at bar.   The plaintiff was the senior in occupancy of the location in question, and there is no reason why it should be asked to surrender its property rights to the defendant without being compensated by such defendant.   By its refusal to obviate interference by the defendant with the plaintiff's lines and service, which interference could have been avoided by the expenditure of a few hundred dollars, the defendant has been unreasonable, and if the plaintiff had not moved its poles and lines, the defendant would have unreasonably interfered with the service and the system of the plaintiff and with its property rights.   The loss in a situation similar to that in the action at bar is more fairly placed upon the defendant, who is the newcomer and who will spread its loss on its customers and its shareholders, than upon the plaintiff, the senior in occupancy, who should not be compelled to spread such loss upon its shareholders and customers.

The court having reached the conclusion that the refusal of the defendant to act as requested by the plaintiff was an unreasonable interference by the defendant with the plaintiff's property rights, the plaintiff is entitled to be reimbursed by the defendant for its expenditure as set forth in the complaint, and the plaintiff, therefore, is entitled to judgment against the defendant for the amount demanded in the complaint, with interest.