TRANSIT COMMISSION, Appellant, *v.* THE LONG ISLAND
RAILROAD COMPANY, Appellant, and NEW YORK AND
QUEENS GAS COMPANY, Respondent.

(Argued March 18, 1930; decided May 6, 1930.)

346

*George H. Stover, Frank C. Bowers* and *Phillip Hodes* for Transit Commission, appellant. The grant to utility companies to locate their structures on or under the streets is subject to such uncompensated changes or relocations as public convenience or security requires. (*New Orleans Gas Light Co.* v. *Drainage Comm.*, 197 U. S. 453; *C., B. & Q. Ry. Co.* v.*Drainage Commrs.*, 200 U. S. 561; *Lake Shore & Mich. So. Ry. Co.* v. *Clough*, 242 U. S. 375; *Chicago, Burlington & Quincy R. R. Co.* v. *Chicago*, 166 U. S. 226; *Chicago, Milwaukee & St. Paul R. R. Co.* v. *Minneapolis*, 232 U. S. 430; *National Water-Works Co.* v. *City of Kansas*, 28 Fed. Rep. 921; *Matter of Deering*, 93 N. Y. 361; *Chase Trucking Co.* v. *Richmond L. & R. R. Co.*, 225 N. Y. 435; *Brooklyn El. R. R. Co.* v. *City of Brooklyn*, 2 App. Div. 98; *M. F. C. & H. P. R. Co.* v. *Spuyten Duyvil Co.*, 65 Misc. Rep. 367; *Dry Dock, E. B. & B. R. R. Co.*, v. *Mayor*, 55 Barb. 298.) The change of grade of a street to eliminate a railroad grade crossing is as much a public improvement as a change of grade for any other purpose. (*New York & New England R. R. Co.* v. *Bristol*, 151 U. S. 556; *Erie R. R. Co.* v. *Public Utilities Commrs.*, 254 U. S. 394; *Missouri, Kansas & Texas Ry. Co.* v. *Oklahoma*, 271 U. S. 303; *Matter of Boston & Albany R. R. Co.*, 64 App. Div. 257; 170 N. Y. 619; *Matter of N. Y. C. & H. R. R. Co.*, 136 App. Div. 760; *Long Island R. R. Co.* v. *Sherwood*, 136 N. Y. Supp. 752; *City of Los Angeles* v. *Los Angeles G. & E. Corp.*, 251 U. S. 32; *New York & Queens El. L. & P. Co.* v. *City of New York*, 221 App. Div. 544; *City of New York* v. *Hudson & Manhattan R. R. Co.*, 229 N. Y. 141.) In construing the Grade Crossing Elimination Act to include the expense of relocating public utility structures in the cost of the elimination, the Appellate

Division disregarded the applicable rules of statutory construction. (*Bertles* v. *Nunan*, 92 N. Y. 152; *People* v. *Palmer*, 109 N. Y. 110.)

*Arthur J. W. Hilly*, Corporation Counsel (*Vincent Victory* of counsel), for City of New York, *amicus curiæ*. The common law placed on the defendant-respondent a burden to remove and relocate its mains whenever so required in the interest of public health, safety or welfare. (*New Orleans G. L. Co.* v. *Drainage Comm.*, 197 U. S. 453; *Stern* v. *International Ry. Co.*, 220 N. Y. 294.) The common law also placed on the defendant-respondent the duty of readjusting its mains to any new street grade fixed and constructed by public authority having jurisdiction in the premises. (*People ex rel. City of New York* v. *Belt Line Ry. Corp.*, 230 N. Y. 86; *New York Central R. R. Co.* v. *Westchester Lighting Co.*, 226 App. Div. 826; *Matter of Torge* v. *Village of Salamanca*, 176 N. Y. 324; *Smith* v. *B. & A. R. R. Co.*, 181 N. Y. 132; *Matter of Malenbacker* v. *Village of Salamanca*, 188 N. Y. 370; *People ex rel. Dole* v. *Town of Hamburg*, 58 Misc. Rep. 643; 127 App. Div. 948; 193 N. Y. 614; *People ex rel. Mott Wheel Works* v. *Hayes*, 178 App. Div. 301; *People ex rel. Dawson* v. *Duffy*, 177 App. Div. 949; 221 N. Y. 594; *City of Corning* v. *O'Neil*, 96 Misc. Rep. 571; *City of Corning* v. *Holmes*, 180 App. Div. 458.) The defendant-respondent is also under a statutory duty to adjust its mains to meet the regulations of public authority. (Code of Ordinances City of New York, chap. 23, § 94-j, subd. 2.)

*Chauncey B. Garver* and *P. F. W. Ruther* for respondent. The expense of relocating gas mains is part of the cost of grade crossing elimination. (*People ex rel. Long Island R. R. Co.* v. *Public Service Comm.*, 181 App. Div. 465; 224 N. Y. 565; *Matter of Town Board of West Seneca*, 244 N. Y. 509; *Mayor* v. *Boston & Albany R. R. Co.*,

225 Mass. 548; *Chicago, R. I. & P. Ry. Co.* v. *Public Service Comm.,* 287 S. W. Rep. 617.) The defendant respondent has no common-law duty to relocate mains at its own expense. (*National Water Works Co.* v. *City of Kansas,* 28 Fed. Rep. 921; *Necaro Co., Inc.,* v. *Eighth Ave. R. R. Co.,* 220 App. Div. 144; *Brooklyn El. R. R. Co.* v. *City of Brooklyn,* 2 App. Div. 98; *People ex rel. N. Y. Elec. Lines Co.* v. *Squire,* 107 N. Y. 593; *Western Union Tel. Co.* v. *Syracuse L. & P. Co.,* 178 N. Y. 325; *Michigan Tel. Co.* v. *City of Charlotte,* 93 Fed. Rep. 11; *Postal Telegraph-Cable Co.* v. *Depew & Lancaster L., P. & C. Co.,* 129 Misc. Rep. 591; 225 App. Div. 728; 251 N. Y. 562; *New York & Queens Elec. L. & P. Co.* v. *City of New York,* 221 App. Div. 544; *Matter of Wilcox,* 213 N. Y. 218; *New York Tel. Co.* v. *State of New York,* 169 App. Div. 310; 218 N. Y. 738; *New York Steam Co.* v. *Foundation Co.,* 107 N. Y. 593; *City of Los Angeles* v. *Los Angeles G. & E. Corp.,* 251 U. S. 32.)

CRANE, J. The public policy of the State of New York, as expressed in the Constitution and in statutes, is to abolish the grade crossings of steam railroads. The enormous increase in the amount of traffic upon the highways, due to the advent of the automobile, calls for some action in behalf of the public welfare to reduce the peril and the danger occasioned by the meeting of the tracks and the street. While realizing the necessity for a change, the people of this State also recognize that it would be impossible and impracticable for the railroads to reconstruct these crossings so as to run over or underneath the highways at their own expense. The people have evidenced a willingness to share the burden, by adopting in 1925, amended in 1927, an amendment to the State Constitution, which became and now is article VII, section 14, of that instrument. This permits the Legislature to authorize by law the creation of a State debt, not exceeding in the aggregate $300,000,000, to provide moneys for

the elimination, under State supervision, of railroad crossings at grade within the State at the expense of the State and railroad companies, counties and cities. (*Matter of Grade Crossings [City of Buffalo]*, 251 N. Y. 331.) Following this constitutional amendment, the Legislature passed chapter 510 of the Laws of 1926, superseded by chapter 677 of the Laws of 1928, amended by chapters 431 and 681 of the Laws of 1929, to be known as " New York City Grade Crossing Elimination Act." This provides that all existing highway railway crossings at grade in the city of New York shall be eliminated in the manner therein stated, the cost to be borne, forty per cent by the State, ten per cent by the city, and fifty per cent by the railroad corporation. All the crossings are not to be eliminated at once, but the work is to proceed gradually by the selection of certain crossings, which may be changed during the calendar year, on application of the Board of Estimate of the city. Notice of the proposed action of the Transit Commission in ordering these changes is to be given under the terms of the act to the railroads affected and also to any person or persons deemed by the Commission to be interested in the proceeding. The Transit Commission shall direct how the elimination shall be made, and shall approve of the contracts for, as well as supervise the construction of, the work. If necessary, the State is authorized to advance the money to carry out the reconstruction, which is to be repaid in the manner designated. The payments to be made by the city are to be charged up to the taxpayers.

The act is quite full and complete in detailing the steps which are to be taken to bring about this change in transit conditions in the city of New York. These brief references, however, to some of its provisions indicate that the work of eliminating grade crossings under this act, is a public work authorized by specific provisions of the Constitution, to be paid for in a large measure out of public funds. The people of this State, in order to pre-

serve and enhance the safety of the traveling public, and to guard the life, limb and welfare of its citizens, have not only ordered and directed the railroads to eliminate grade crossings, but also, through the Constitution and the laws, agreed to share the expense. The whole matter is a public undertaking in behalf of the welfare of the people of this State, and in this instance, the people of the city of New York, in which the railroads are to pay a part of the cost.

On August 3, 1927, the Transit Commission, acting in accordance with the New York City Grade Crossing Elimination Act, above mentioned, made its final order directing the Long Island Railroad Company to eliminate two grade crossings at Cross Island boulevard, Auburndale, and Bell avenue, Bayside, New York city. The New York and Queens Gas Company has a franchise to run its gas main through Bell avenue at this point, and owns and maintains an eight-inch pipe in the bed of Bell avenue, Bayside, underneath and below the crossing at grade of the tracks of the Long Island Railroad Company. The plans prepared by the engineers to carry out the order of the Transit Commission propose to depress the tracks of the railroad at Bell avenue crossing about twenty feet below the present grade. This of course requires the removal and relocation of the gas main. The Gas Company received notice of the hearing before the Transit Commission upon the application of the Board of Estimate and Apportionment of the city of New York for the elimination of this grade crossing, and appeared on the hearings by its vice-president and its attorney and counsel. In other words, pursuant to the provisions of the Elimination Act, the Gas Company was deemed by the Commission to be a party interested in the proceeding and was thereupon given notice of the application and a full opportunity to be heard by its representatives and counsel. The final order of the Commission followed.

The Gas Company, realizing that it alone could remove or disconnect its gas main with safety, refused to obey

the order of the Transit Commission, or to relocate its pipes, and refused to permit the contractor for the Long Island Railroad Company to interfere with its main, unless and until the cost of making the changes was either paid or guaranteed to it. The action in the field has brought into the court the question whether the cost of removing this gas main must be borne by the New York and Queens Gas Company, or whether it is part of the elimination cost to be borne by the taxpayers and the Railroad Company.

The Gas Company has received from the public authorities its franchise or privilege to lay and maintain its gas main under the surface of the public street. Without this grant from the people it has no rights in the highway. This privilege, or franchise, is at all times subject to the police power of the State; in other words, the company maintains its pipes subject to the obligation to remove them whenever the public health or safety require this to be done. Although authorized to lay its pipes in the public streets, the company takes the risk of their location and is bound to make such changes as the public convenience and security require, at its own cost and charge. (*Chicago, Burlington & Quincy R. R. Co.* v. *Chicago*, 166 U. S. 226; *New Orleans Gas Light Co.* v. *Drainage Commission*, 197 U. S. 453; *Chicago, Burlington & Quincy R. R. Co.* v. *Drainage Commrs.*, 200 U. S. 561; *Lake Shore & Michigan Southern R. Co.* v. *Clough*, 242 U. S. 375; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *City of Minneapolis*, 232 U. S. 430; *National Water Works Co.* v. *City of Kansas*, 28 Fed. Rep. 921; *Matter of Petition of Deering*, 93 N. Y. 361; *Chace Trucking Co.* v. *Richmond Light & R. R. Co.*, 225 N. Y. 435.) All these cases are to the point, that these public service corporations maintain their rights in the streets, subject to reasonable regulation and control, and are bound to relocate their structures at their own expense whenever the public health, safety or convenience requires the change to be made. This common-law rule, however,

does not go so far as to place the cost of removal and relocation upon the company, when the change is required in behalf of other public service corporations or in behalf of municipalities exercising a proprietary instead of a governmental function. The departure from the rule arises out of the distinction between public welfare and private enterprise of a *quasi* public nature. (*City of Los Angeles v. Los Angeles Gas & Electric Corp.*, 251 U. S. 32; *New York & Queens Elec. L. & P. Co.* v. *City of New York*, 221 App. Div. 544, and *City of New York* v. *Hudson & Manhattan R. R. Co.*, 229 N. Y. 141.)

The fact that the New Jersey statute (Act of March 12, 1913, ch. 57, N. J. P. L. 1913, p. 91) makes special provision for public service corporations and companies of like nature to make changes in or removals of their property at their own expense under grade crossing elimination plans, does not signify that the New Jersey courts take a different view of this common-law obligation. (*Erie R. R. Co.* v. *Public Utility Commissioners*, 254 U. S. 394.) Clarity is obtained by these specific provisions, and the Grade Crossing Elimination Act of this State might well have contained similar words. The fixing of an obligation in statutes similar to these grade crossing acts dealing with many details and directions does not always indicate that the obligation would not have existed at common law, and is solely dependent upon the phraseology of the statute. In *People ex rel. L. I. R. R. Co.* v. *Public Service Commission* (181 App. Div. 465; affd., 224 N. Y. 565) the opinion expressly assumes that the several companies whose structures were interfered with could have been compelled by the exercise of proper authority to make the necessary shifting and relocation of those structures. The facts in *Mayor, etc.,* v. *Boston & Albany R. R. Co.* (225 Mass. 548, 562) do not bring it within the point of our present discussion.

The case of *New Orleans Gas Light Co.* v. *Drainage Commission* (197 U. S. 453) embodies the law which has

been consistently followed in this State and elsewhere, and from which I can find no departure. The opinion states: " It would be unreasonable to suppose that in the grant to the gas company of the right to use the streets in the laying of its pipes it was ever intended to surrender or impair the public right to discharge the duty of conserving the public health. The gas company did not acquire any specific location in the streets; it was content with the general right to use them, and when it located its pipes it was at the risk that they might be, at some future time, disturbed, when the State might require for a necessary public use that changes in location be made. * * * We see no reason why this same principle should not apply to the sub-surface of the streets, which, no less than the surface, is primarily under public control. The need of occupation of the soil beneath the streets in cities is constantly increasing, for the supply of water and light and the construction of systems of sewerage and drainage, and every reason of public policy requires that grants of rights in such sub-surface shall be held subject to such reasonable regulation as the public health and safety may require."

As we are approaching this case from the fundamental common-law right applicable to franchises in streets as limited by the police power, we need only refer to the Transportation Corporations Law (Laws of 1926, ch. 762; Cons. Laws, ch. 63), under which gas and electric companies are incorporated. Subdivision 1 of section 11 gives these companies power to lay conductors for gas in streets with the consent of the municipal authorities and under such reasonable regulations as they may prescribe. The Code of Ordinances of the City of New York (Ch. 23, art. 9, § 94, subd. 2), among other things, provides: " Public service corporations whose pipes, mains or conduits are about to be disturbed * * * by the regulating or grading of any street, shall, on the receipt of the notice provided for in the preceding subdivision, remove or otherwise

protect and replace their pipes, mains and conduits, and all fixtures and appliances connected therewith or attached thereto, where necessary, under the direction of the borough president." The city of New York, which has filed a brief in this case, presents the point that the grade at Bell avenue has been changed by the order of the Transit Commission, and the plans of the engineers, and that this ordinance applies. The grade or level of Bell avenue is not to be changed; the grade of the railroad at this point drops to twenty feet beneath the avenue, so that it is the latter change which necessitates the removal of the gas main, and not any change in the grade of the highway. We doubt whether the ordinance has any application, and will not pause to discuss it.

Upon the refusal of the New York and Queens Gas Company to remove its gas main upon the request of the Long Island Railroad Company, the Transit Commission, pursuant to section 57 of the Public Service Commission Law (Cons. Laws, ch. 48), obtained an order of mandamus from the Special Term requiring the Gas Company to proceed forthwith to act in such a manner as to permit the work of elimination to proceed. The Appellate Division, by a divided court, has reversed the Special Term order, stating that while the State possesses the power to compel the New York and Queens Gas Company to relocate its structures to conform to the improvement in question, it had not exercised this power by any express language of the statute. In other words, as the New York City Grade Crossing Elimination Act made no provision for the expense of such changes, the cost was to be part of the general expense of the elimination to be borne by the State, city and railroad company.

We are of the opinion that the very reverse construction must be given to the law; that the common-law rule, as above stated, applies to the cost of all such changes, until the Legislature provides otherwise, and this it has failed to do. Chapter 677 of the Laws of 1928 must be read in

connection with the common law existing at the time, with which the Legislature is presumed to have been acquainted. (Sutherland, Statutory Construction [2d ed.], vol. 2, § 499.) Rules of the common law are to be no further abrogated than the clear import of the language used in the statute absolutely requires. (*Bertles* v. *Nunan*, 92 N. Y. 152, 158.)

However, we may go further than rely solely upon a rule of construction applicable to an omission. The aim and object of the elimination act, and the methods used to accomplish its purpose, indicate that there was no intention to relieve public service corporations having franchises in the highways from their ordinary obligations. The general rule is and always has been, as we have above stated, that these corporations must relocate their properties in the highway when public necessity requires. The grade crossings of steam railroads have created an urgent necessity to do something for the safety of the traveling public. Not for the benefit of the railroads, but for the benefit of the people of the State, these grade crossings must go, and while the result may be slow in attainment, the work goes steadily on. Cost and engineering problems have to be faced; the former, the people have solved by assuming half the cost, and providing funds which may be borrowed for immediate use; the engineering problems are passed to public officials, known as the Transit Commission, under whose approval and supervision all plans are carried out. The reasonable construction of the elimination act under these circumstances is to assume that the people are not to be burdened with any heavier expense than necessity requires, and that to relieve the public service corporations having franchises in the streets of their common-law liabilities and to pass them over to the taxpayer can only be accomplished by the express direction of the Legislature.

In the absence of any such legislation, the New York and Queens Gas Company must at its own expense remove

and relocate its gas main at Bell avenue, and permit the work of elimination, as planned, to proceed.

The order of the Appellate Division should, therefore, be reversed, and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Ordered accordingly.