CITY OF NEW YORK, Respondent, *v.* NEW YORK TELE-PHONE COMPANY, Appellant.

Argued March 17, 1938; decided April 13, 1938.

*Irving W. Young, Jr., N. H. Egleston, Earle M. Simonson, H. N. Wells* and *Charles T. Russell* for appellant. Jurisdiction based upon the sovereign police power was never delegated by the State to the city. (*Matter of Grade Crossing [Lehigh Valley R. R. Co.]*, 264 N. Y. 195; *Matter of N. Y. C. R. R. Co.* v. *Public Service Comm.*, 266 N. Y. 294; *People ex rel. City of New York* v. *New York Rys. Co.*, 217 N. Y. 310; *City of New York* v. *Hudson & Manhattan R. R. Co.*, 188 App. Div. 294; 229 N. Y. 141; *Postal Telegraph-Cable Co.* v. *Depew & Lancaster Light, Power & Conduit Co.*, 129 Misc. Rep. 591; 225 App. Div. 728; 251 N. Y. 562.) The specific provisions of the Rapid Transit Act (L. 1891, ch. 4, as amd.) and estab-

lished law imposed the expense of relocating the telephone conduits upon the city in its proprietary capacity as the owner of the railroad. (*Wilson* v. *Costich Co.*, 231 App. Div. 346; 256 N. Y. 629; *Matter of Rapid Transit R. R. Commissioners*, 197 N. Y. 81; *Litchfield Constr. Co.* v. *City of New York*, 244 N. Y. 251; *N. Y. & Queens Electric Light & Power Co.* v. *City of New York*, 221 App. Div. 544; *City of Los Angeles* v. *Los Angeles Gas & Elec. Corp.*, 251 U. S. 32; *Postal Telegraph-Cable Co.* v. *Depew & Lancaster L., P. & C. Co.*, 129 Misc. Rep. 591; 225 App. Div. 728; 251 N. Y. 562; *Postal Telegraph-Cable Co.* v. *San Francisco*, 53 Cal. App. 188; 257 U. S. 648; *Western Union Tel. Co.* v. *Los Angeles Electric Co.*, 76 Fed. Rep. 178; *Western Union Tel. Co.* v. *Los Angeles Electric Co.*, 178 N. Y. 325; *Bell Tel. Co.* v. *Belleville El. Co.*, 12 Ont. 571; *City of New York* v. *Davis*, 7 Fed. Rep. [2d] 566.)

*William C. Chanler, Corporation Counsel* (*Arthur A. Segall* and *Herman Horowitz* of counsel), for respondent. The relocation of defendant's duct line was part of and incidental to the improvement made by the city under charter authority for the more beneficial use of the public highway. It was not an incident of subway construction. Defendant was obligated to conform to the public improvement at its own expense. (*Matter of City of New York* [*Ely Ave.*], 217 N. Y. 45; *Matter of Green* v. *Miller*, 249 N. Y. 88; *City of Buffalo* v. *Stevenson*, 207 N. Y. 258; *People ex rel. City of New York* v. *Belt Line Ry. Corp.*, 230 N. Y. 86; *New Orleans Gas Light Co.* v. *Drainage Comm.*, 197 U. S. 453; *Transit Comm.* v. *Long Island R. R. Co.*, 253 N. Y. 345; *Chace Trucking Co.* v. *Richmond L. & R. R. Co.*, 225 N. Y. 435; *Matter of Deering*, 93 N. Y. 361; *New York & Queens Electric Light & Power Co.* v. *City of New York*, 221 App. Div. 544; *Brooklyn Elevated R. R. Co.* v. *City of Brooklyn*, 2 App. Div. 98; *City of New York* v. *Brooklyn Edison Co.*, 247 App. Div. 48.)

RIPPEY, J. This action was brought by the city of New York for reimbursement for the cost of relocating the wire, conduits, and other structures of defendant located in Fourth avenue in the borough of Brooklyn. These structures were put in originally under a valid franchise about October 26, 1912, under permits issued by the duly constituted city authorities and approved by the Public Service Commission for the First District. Defendant thereafter maintained and used them in the original location until 1928. The plaintiff completed the work of shifting and relocating the cables, conduits, ducts and other underground structures of defendant on November 20, 1928. The relocation consisted generally in shifting the conduits to the east of the original location and raising or lowering them as conditions required between Atlantic avenue and Pacific street.

The original location of defendant's structures was under the street pavement between curbs,— within street lines. As relocated, they were still within the street lines between curbs. Defendant's franchise was held subject to public control and to such reasonable regulation as to location and use as public safety, health and convenience might, from time to time, require (*New Orleans Gas Light Co.* v. *Drainage Commission*, 197 U. S. 453). Where public interest requires, the sovereign, acting in a governmental capacity, may compel relocation of the facilities of public service corporations, and the cost thereof, in the absence of statutory provisions to the contrary, must follow the rule of the common law and be borne by the utility (*Transit Commission* v. *Long Island R. R. Co.*, 253 N. Y. 345, 354).

In the center of Fourth avenue between Atlantic avenue and Pacific street was a mall 19.06 feet in width. On each side was a roadway 24½ feet wide. Underneath the street was operated the municipal subway. At each cross street stairways were constructed leading down to the mezzanine floor above the subway tracks, and from

this floor, in turn, stairways led to the station platform. Above and sheltering each stairway was a cover or kiosk. The borough president had control of the streets of the city (Charter of the City of New York [Laws of 1901, ch. 466], § 383, as amd. by L. 1921, ch. 170; L. 1933, ch. 829) subject to the supervision of the Board of Estimate and Apportionment (§ 242, as amd. by L. 1905, ch. 629). These authorities determined that public convenience and necessity required the removal of the mall and the repaving of the street to provide an unobstructed highway. To accomplish the street improvement it was necessary to eliminate the subway entrances from the mall and this required action by the former Transit Commission and its successor, the Board of Transportation, who had charge of the construction and operation of municipal subways (Rapid Transit Act [Laws of 1891, ch. 4], as amended and supplemented; § 134 of the Public Service Law [Cons. Laws, ch. 48], as supplemented by chapter 573 of the Laws of 1924). When requested so to act the Board of Transportation also was given statutory authority to act as agent for the city to prepare and submit plans to the Board of Estimate and Apportionment and to proceed with the construction and equipment, to advertise for bids and let contracts for improvements incident to subway operation (Public Service Law, § 134a). The city authorities then decided to erect new entrances and to provide new stairways to the subway on and from the street sidewalks to offset the closing of the entrances from the mall and, to accommodate the stairways, to relocate defendant's underground facilities. Mere removal of the mall and old stairway entrances and repaving of the street did not necessitate relocation of defendant's underground structures.

The Transit Commission determined that the existing rapid transit railroad structures under and along Fourth avenue were in all respects safe and adequate to provide for the needs of the traveling public, that the proposed

change was in no way attributable to lack of facilities or to lack of equipment for the proper service and convenience of the users of the railroad, that the element of danger from the presence of the mall and subway entrances, if any, was caused solely by the vehicular traffic along Fourth avenue and that the cost of the relocation of the entrances as proposed, not being for a rapid transit purpose, could not be paid from rapid transit funds, to which conclusion the Board of Transportation assented. Thereupon the city demanded that the defendant pay the cost of the relocation of its underground facilities and defendant refused so to do.

Since its underground structures were located entirely outside of the limits of the mall in the center of Fourth avenue, it is the claim of the defendant that they were not within the arrangement embraced in the street improvement project involving the elimination or reduction of the width of the mall, that the relocation of its structures was rendered necessary only because of the building of the substituted entrances into the subway and that plaintiff did the work of removal and relocation of defendant's property in a proprietary capacity as owner of the rapid transit railway which required plaintiff to make such changes and relocation at its own expense. We think the relocation of defendant's underground structures was not a necessary part of the highway improvement. On the contrary, the construction of entrances to the subway was a proprietary activity of the city (*Matter of Rapid Transit R. R. Commissioners*, 197 N. Y. 81, 96; *Litchfield Construction Co.* v. *City of New York*, 244 N. Y. 251, 263; *City of Los Angeles* v. *Los Angeles Gas & Electric Corp.*, 251 U. S. 32). Necessity, if any, for relocation of defendant's facilities was due to plaintiff's selection of the locality for the entrances to its subway. As owner of the railway it might, perhaps, compel the rearrangement of defendant's facilities. Whether it had such right is not a question for decision here. With or without that right, it has pro-

ceeded to relocate them. No authority has been delegated by the Legislature to the city as owner of the subway to require relocation of public utility facilities at the expense of the utility. In relocating defendant's underground structures, the city acted solely in its proprietary capacity as owner and operator of the subway under the provisions of the Rapid Transit Act, and, having acted in that capacity, it must bear the cost (*People ex rel. City of New York* v. *New York Railways Co.*, 217 N. Y. 310; *City of New York* v. *Hudson & Manhattan R. R. Co.*, 229 N. Y. 141; *Postal Telegraph-Cable Co.* v. *Depew & Lancaster Light, Power & Conduit Co.*, 251 N. Y. 562, affg. 225 App. Div. 728, affg. 129 Misc. Rep. 591).

The judgments should be reversed and the complaint dismissed, with costs in all courts.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur.

Judgments reversed, etc.