STATEN ISLAND EDISON CORPORATION, Plaintiff, *v.* STATEN ISLAND RAPID TRANSIT RAILWAY COMPANY et al., Defendants.

First Department, November 26, 1943.

*George Foster, Jr.,* of counsel (*Edmund B. Naylon* with him on the brief; *Naylon, Aronson and Foster,* attorneys), for plaintiff.

*Jesse C. Millard* of counsel (*Cravath, de Gersdorff, Swaine & Wood,* attorneys), for defendants Staten Island Rapid Transit Railway Company and Staten Island Railway Company.

*Frank C. Bowers* of counsel (*Gay H. Brown* counsel to Public Service Commission), for defendant Public Service Commission.

*Irving Galt, Assistant Attorney-General,* of counsel (*Orrin G. Judd, Solicitor-General,* with him on the brief; *Nathaniel L. Goldstein, Attorney-General,* attorney), for defendant Frank C. Moore, as Comptroller, etc.

CALLAHAN, J. The question presented upon this submission of controversy is whether all or only one half of the cost of relocating certain electric transmission lines erected on defendants' (railway companies') rights of way is required to be met by the State of New York in connection with various grade crossing elimination proceedings.

Prior to September 4, 1940, when this dispute arose, defendants, The Staten Island Rapid Transit Railway Company and The Staten Island Railway Company (hereinafter referred to collectively as "the railway company"), had eliminated sixty-five grade crossings on their rights of way, and four more were in the process of elimination. The carrying out of these projects required the removal and relocation of power lines, with the supporting poles and connected wires. The power lines were owned by plaintiff (hereinafter sometimes called "the electric company"), but were used by the railway company. The cost of the work was approved, and in certain cases a final accounting was had between the railway company and the State wherein

the entire cost of relocation of the power lines was included as part of the so-called divisible cost of the elimination. With respect to those completed eliminations where no final accounting has been had, and as to those where the elimination has not been completed, the State, since September 4, 1940, has refused to pay more than one half the expense of relocating those lines. This change in position by the State came about through discovery by its officers, about the date last mentioned, of the existence of a contract (hereinafter referred to in detail) which had been entered into between plaintiff and defendant, the railway company, dated May 1, 1924. The date of this contract was prior to the adoption in 1925 of the first amendment to our State Constitution (art. VII, § 14) providing for the sharing by the State of the cost of eliminating railroad grade crossings.

Under statutes adopted pursuant to this constitutional amendment, the cost of such eliminations was to be shared forty-nine per cent by the State, one per cent by the city wherein the same was located, and fifty per cent by the railroad company affected. Thereafter, by constitutional amendment effective in 1938, and by subsequent statutes, changes were made in the law so that as to all proceedings subsequent to January 1, 1939, the State assumed the entire cost of elimination, including incidental improvements rendered necessary or desirable thereby. Under the new laws, there was an exception provided whereby, if benefit could be established, the railway company would be required to pay fifteen per cent of the divisible cost, but this exception is not claimed to be applicable to any of the present proceedings.

Under the agreement of May 1, 1924, above referred to, plaintiff was to construct and maintain a power line along the railway's right of way at its own cost and expense, which was to be the source of supply for the electric energy required to operate defendant's railroad. Plaintiff reserved the right to use the transmission lines for the purpose of supplying electricity to other customers. There is, however, no statement in the submission that any customers, other than the railway, have ever been supplied from the line in question. Under the agreement, the railway company obtained the option to purchase the transmission line on the payment of the cost thereof, less depreciation. In case the railway company exercised this option, the electric company had the right, if it desired, to continue a line along the route for its other customers for a period of ten years after such purchase, on paying to the railway company

half of the cost of the supporting structures and on meeting one half of the cost of maintenance. Following the foregoing provisions, the agreement states: " If it becomes necessary in the opinion of the Consumer [railway company] for it to require changes in the location of said line for any reason, the Company [plaintiff] agrees to make such changes in location as may be required of it, and, in that event, the cost of making the changes in any supporting structures, or wires, shall be divided equally between the Company and the Consumer."

It was upon learning of the existence of the above-quoted clause that the Department of Public Service of the State of New York and the Comptroller of the State of New York, on the advice of the Attorney-General, refused to pay more than half of the cost of relocating the power lines in question. It is our view that the contract referred to has no application to the relocation of transmission lines in a grade crossing elimination proceeding. This is so because the contract is expressly limited to changes required as necessary in the opinion of the railway company. In a grade crossing elimination proceeding, the changes ordered by the Department of Public Service or its predecessors were required to be effected irrespective of any opinion that the railway company might have as to the necessity therefor. The parties have stipulated that none of these lines would have been disturbed were it not for the ordering of grade crossing eliminations. Furthermore, it is clear, because of the date of its execution, that the contract mentioned was not entered into by the parties with an eye toward possible grade crossing eliminations.

The parties have stipulated, in substance, that prior to September 4, 1940, the railway company and the electric company had made it a practice to share equally that portion of the expense not paid by the State arising from relocating the power lines. Prior to the date last mentioned, the course pursued by the parties had been for the electric company to do the work of relocation at its own expense, send its bill to the railway company which, on payment of the bill, in turn billed the State for the full amount thereof. Under those proceedings, which had been initiated prior to January 1, 1939, the State, pursuant to the statutes then applicable, remitted to the railway company fifty per cent of the amount above referred to. The electric company then paid to the railway company one half of the fifty per cent which the railway company had been required to meet. The two companies by this arrangement each paid twenty-five per cent of the total cost, the State pay-

ing fifty per cent thereof. After September 4, 1940, the State declined to pay more than fifty per cent of any bill for removing the transmission lines, although the law effective at that time required it to pay, except in case of benefit to the railway company, one hundred per cent of the railway company's expense.

We are of the opinion that the practice adopted by the two utility companies did not justify this action by the State. Why the earlier practice of sharing the cost had been followed is not revealed. There is no stipulation in the submission that it was done pursuant to any construction by the parties of the agreement above referred to. As we have said, the written contract did not require plaintiff to pay any of the cost of relocating its lines in proceedings of the present nature. Apparently the arrangement was entirely a voluntary one. We find that such voluntary arrangement would not bind the future action of the parties, and no legal advantage could be taken thereof by the State.

The State contends further, however, that the object of the statutes relating to the sharing of expense of grade crossing eliminations was solely to render assistance to railroad companies and not to other public utility companies which might have their facilities on railroad property. The State, therefore, argues that as the power lines involved here were the property of plaintiff, a public utility company, in whose favor no statutory provision for assistance is made, plaintiff was required under common law to move such facilities at its own cost and expense when such relocation was necessary to promote the public convenience and security.

In support of this contention the State cites the cases of *Transit Comm.* v. *Long Island R. R. Co.* (253 N. Y. 345); *Matter of Town of Cheektowaga Grade Crossings* (259 App. Div. 141, affd. 283 N. Y. 687) and *Erie R. R. Co.* v. *Public Utility Comrs.* (254 U. S. 394). In the two New York cases cited, the public utilities required to be relocated were in public highways and the decisions apparently rested largely on the rule that utilities located in public streets in accordance with municipal consents were so located subject to the duty to relocate them when their presence interfered with the reasonable use of such streets. (See *New Orleans Gas Co.* v. *Drainage Comm.*, 197 U. S. 453.) Here, the transmission lines involved are located on the railway company's own property and not in the beds of streets.

While it was pointed out in *Transit Comm.* v. *Long Island R. R. Co.* (*supra*) that the common law required utility com-

panies to relocate their facilities in order to promote public convenience and security, that statement was made in a case where the utility involved was in the bed of a street, and what was said must be read in that light.

In *Erie R. R. Co.* v. *Public Utility Comrs.* (*supra*) the United States Supreme Court upheld the constitutionality of a New Jersey statute which required the elimination of grade crossings at the expense of the railroads affected. The New Jersey law expressly provided that, when in such a proceeding the removal of any property of any telegraph, electric lighting or similar utility was required, the company owning the facility must do so at its own cost and expense. The decision of the United States Supreme Court appears to have been placed on the broad ground that the elimination of grade crossings called for the necessary adjustment of two conflicting interests: *first,* that of the streets and the public using them; *second,* that of the railroads and the public using them. The decision held that the former represented the more important interest of the two. The right of the States to require relocation of utilities at the companies' expense in grade crossing eliminations was accordingly held to exist. But in that case it appears that at least part of the utilities involved were on the public highways. No point appears to have been made of any distinction between the law applicable to the facilities within and those outside of the lines of the street.

No case has been called to our attention which goes so far as to hold that under the common law a utility company having its facilities on a railroad right of way, not within the limits of a public street, is required to relocate same at its own cost and expense in connection with grade crossing eliminations. What the courts may decide as to the extent of the State's power in imposing such expense on a utility company, where the relocation of its facilities is incidental and essential to the elimination of an adjacent grade crossing, we need not attempt to foresee. In this State, a statute has been enacted which requires that a railroad company be compensated for its expense in connection with or incidental to a grade crossing elimination. (L. 1928, chs. 677, 678, as amd.) On the facts before us we deem it clear that relocation of the power lines involved herein was a railroad company's expense incidental to an elimination.

Insofar as the submission discloses, the transmission lines involved herein have been used only to furnish power to the railway company. Their use for other purposes was only potential. The railway company received all of the electric

energy which it used for the operation of its trains from these lines. It could not run its railway without this power and these facilities. Under such circumstances, we deem that the transmission lines were railroad facilities, and the cost of relocating them was properly part of the divisible expense of the grade crossing eliminations. We need not determine whether, in a case where the lines are used in part for railroad purposes and in part for other purposes, the entire or any portion of the expense of relocation would come within the statute.

We adjudge that the total cost of removing, relocating and changing the electric facilities referred to in this submission is a proper part of the cost and expense of the grade crossing elimination proceedings involved herein.

Judgment will be entered accordingly, without costs.

TOWNLEY, GLENNON, DORE and COHN, JJ., concur.

Judgment unanimously directed in accordance with opinion, without costs. Settle order on notice. [See *post*, p. 819.]