NEW YORK TELEPHONE COMPANY, Plaintiff, *v.* CITY OF BINGHAM-TON, Defendant.

Third Department, July 13, 1965.

*Hinman, Howard & Kattel* (*C. Addison Keeler* and *Edward L. Friedman* of counsel), for plaintiff.

*Kramer, Wales & Robinson* (*Donald W. Kramer* of counsel), for defendant.

HERLIHY, J. There is no dispute that the facilities of the plaintiff were properly in the street, pursuant to section 27 of the Transportation Corporations Law, and the street having been closed, it is not necessary to our decision to decide under what right or title the facilities were there in the first instance.

The closing of the street was in accordance with a resolution adopted by the City Council on October 15, 1956 and approved by the Mayor, pursuant to which the city acquired title to 29 acres of land, including property on both sides of Chenango Street, as well as the discontinued portion of the street itself, and conveyed such property to Chenango Court, Inc., a limited dividend corporation, for a consideration, and for development as a middle income housing project to be financed pursuant to the National Housing Act. (U. S. Code, tit. 42, § 1401 *et seq.*) The closing of the street was admittedly not for highway purposes.

The right to condemn private property for urban development is not an issue here but such use has been previously determined to be for public purposes, lawful and constitutional. (See *Cannata* v. *City of New York*, 11 N Y 2d 210; *Matter of New York City Housing Auth.* v. *Muller*, 270 N. Y. 333, 340; *Matter of Murray* v. *La Guardia*, 291 N. Y. 320; *Klibanoff* v. *City of New York*, 24 Misc 2d 649, 652, affd. 17 A D 2d 725.)

The determinative issue on this appeal is whether the renewal project, undertaken by the city and thereafter conveyed to private interest, constitutes a governmental function or a proprietary one. The question is limited so that we do not determine whether our conclusion would be different if the housing project were to be owned, developed, operated and maintained by city housing authorities. (E.g., *Mayor and City Council of Baltimore* v. *Baltimore Gas & Elec. Co.*, 232 Md. 123.)

In *Dorsey* v. *Stuyvesant Town Corp* (299 N. Y. 512) with reference to the applicability of housing statutes in this State, the court said (p. 522): " It may fairly be said that the whole housing article is instinct with the theory, consistent with its two purposes, that low rent housing for persons of low income is to be a function of government and the rehabilitation of sub-

standard areas is to be the function of private enterprise aided by government."

*Matter of City of New York (Gillen Place)* (304 N. Y. 215), albeit concerned with the Administrative Code of the City of New York and the Rapid Transit Law, is controlling when applied to the present facts, governed by section 72-k of the General Municipal Law of the State of New York (now art. 15) and the National Housing Act of 1949 (63 U. S. Stat. 413).

In *Gillen Place*, the street was closed to permit the building of a municipal garage and the utility company therein filed a claim for damages for the cost of relocating its facilities. The court determined that the purpose of the closing, although in the interest of the public, was proprietary and compensation was allowable. The court said (p. 221): " It is true, of course, that street closings usually result in the ultimate appropriation of the land to private ownership, but there is a great difference where, as here found, the very purpose of the closing is to accomplish the devotion of the land to a use by the city which, although in the interest of the public, is nevertheless proprietary. The plain facts are that claimants have been forced to abandon their installations in Gillen Place and reconstruct them elsewhere and for a much greater distance in order to make room for the bus garage and shop, and in such circumstances they are entitled to be compensated for their loss [citations]. As we said in *Transit Comm.* v. *Long Island R. R. Co.* (253 N. Y. 345, 352) ' when the change is required in behalf of other public service corporations or in behalf of municipalities exercising a proprietary instead of a governmental function ', the common-law rule that utilities maintain their installations in public streets subject to the risk of relocating them at their own expense when public necessity so requires, does not apply."

Thus, while the urban renewal project and the undertaking by the city to bring the project to fruition were in the public interest, the fact that the property was to be used for a public housing purpose and that the buildings were to be erected and operated under the aegis of a private corporation dictates that the city's action be regarded as proprietary in nature. In this regard, it should be noted that we recognize public housing to be a vital concern of government. However, since public transportation is no less a concern of government and is regarded as a proprietary function (*Matter of City of New York* [*Gillen Place*], *supra*; *City of New York* v. *New York Tel. Co.*, 278 N. Y. 9), we perceive no basis upon which we may say that public housing should be considered a governmental function particularly where, as here, the ultimate benefactor is a private

corporation. Under the circumstances, there is no justifiable reason why one private corporation (Telephone Co.) should sustain substantial damage which would inure to the benefit of another private corporation (Chenango).

The plaintiff should be entitled to judgment against the defendant in the amount of $53,068.94.

GIBSON, P. J., REYNOLDS, AULISI and HAMM, JJ., concur.

Judgment granted for plaintiff, in the amount of $53,068.94, with $75 costs.