Western Union Telegraph Company, Respondent, *v.* Electric Light and Power Company of Syracuse, Appellant, Impleaded with Others.

1. Equity — When Judgment Denying an Injunction But Requiring Defendant to Give Security for Damages to Be Admeasured in Action at Law Is Unauthorized. Where the complaint in an equity action alleges that the defendant had constructed its street subway over and in such close proximity to the plaintiff's subway, previously constructed, as to cause it great inconvenience and expense in making repairs, and demands an injunction restraining the defendant from maintaining its subway in that position and compelling it to remove its lines therefrom, but does not allege defendant's insolvency or that a multiplicity of suits would result, a judgment, denying an injunction, but requiring the defendant to give a bond to indemnify the plaintiff against damages which it might suffer by reason of the trespass, is unauthorized. It is, in effect, an adjudication that the plaintiff had an adequate remedy at law for such damages as it might suffer by reason of the facts alleged and that an action in equity was unnecessary.

2. Streets — Use of Space, Beneath, for Subways and Other Structures — Franchises to Use Same Must Be Construed in Public Interest. A franchise granted by a city permitting a corporation to

place a structure beneath the streets is to be construed in the interest of the public and in view of the fact that the space below the surface of city streets is becoming more valuable every year for the purpose of conducting water, heat and light to the dwellings of private citizens, as well as for the construction of sewers, subway lines and other agencies of great public utility; and where the common council in granting such a franchise provided, as authorized by the charter of the city, that nothing therein contained should be deemed to give it "any exclusive franchise to use the streets for a subway or for any other purpose" and reserved all rights and privileges not specifically given, the corporation cannot complain that another company thereafter located its subway under the authority and direction of the city and its officers, so close to the plaintiff's subway as to cause it inconvenience and expense in making repairs, if, under the circumstances, the location of the new subway is not an unreasonable interference with plaintiff's rights.

*Western Union Tel. Co.* v. *Syracuse El. L. & P. Co.*, 81 App. Div. 655, reversed.

(Argued February 29, 1904; decided April 26, 1904.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 19, 1903, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William P. Goodelle* for appellant. The discretion of a municipal corporation, within the sphere of its powers, is not subject to judicial control, except in cases where fraud is shown, or where the power or discretion is being grossly abused. (*Morgan* v. *City of Binghamton*, 102 N. Y. 500; *City of Crawfordsville* v. *Braden*, 130 Ind. 149; High on Inj. [3d ed.] §§ 1240, 1270; 1 Dillon on Mun. Corp. [4th ed.] §§ 94, 95, 680–700; 2 Dillon on Mun. Corp. §§ 832, 908; 20 Am. & Eng. Ency. of Law [2d ed.], 1229, 1230; *L. C. R. R. Co.* v. *City*, 8 Bush, 415; *Talcott* v. *City of Buffalo*, 125 N. Y. 280; *Bell* v. *City of Rochester*, 61 N. Y. S. R. 721; *Hines* v. *City of Lockport*, 50 N. Y. 236; *Lynch* v. *Mayor, etc.*, 76 N. Y. 60; *Mills* v. *City of Brooklyn*, 32 N. Y. 489.) The respondent's rights are restricted by the very terms of its franchise, which must be strictly construed against the

grantee, and it takes nothing by implication either as against the city or the appellant. (*S. W. Co.* v. *City of Syracuse,* 116 N. Y. 171; *Stourbridge Canal* v. *Wheely,* 2 B. & A. 792; *Comm.* v. *E. & N. E. R. R. Co.,* 27 Penn. St. 339; *Penley* v. *City of Auburn,* 85 Me. 278; *W. U. T. Co.* v. *New York,* 38 Fed. Rep. 552; *Tel. Co.* v. *Mass.,* 125 U. S. 548; *M. U. T. Co.* v. *Chicago,* 16 Fed. Rep. 309.)

*Charles P. Ryan* for respondent.   Neither the appellant nor the city of Syracuse, acting through its commissioner of public works, had the right, for the purpose of constructing appellant's subway, to interfere with or impair the free and unobstructed use by the respondent of the subway constructed by it. (*St. Louis* v. *W. U. Tel. Co.,* 63 Fed. Rep. 68; *N. O. G. Co.* v. *L. L. Co.,* 115 U. S. 650, 660; *N. O. W. Co.* v. *Rivers,* 115 U. S. 674, 681; *L. G. Co.* v. *C. G. Co.,* 115 U. S. 683, 692; *People* v. *O'Brien,* 111 N. Y. 1; *City of New York* v. *S. A. R. R. Co.,* 32 N. Y. 261; *Langdon* v. *Mayor, etc.,* 93 N. Y. 129; *W. U. Tel. Co.* v. *Mass.,* 125 U. S. 530.)   The rule, that public grants shall be construed most strongly in favor of the public, does not apply to respondent's franchise. (*Langdon* v. *Mayor, etc.,* 93 N. Y. 129; *Neb. Tel. Co.* v. *York Gas Co.,* 27 Neb. 284, 305; 3 Am. Elec. Cases, 364; Pom. Eq. Juris. § 414; 2 Dillon Mun. Corp. § 692; *Syracuse Water Co.* v. *City of Syracuse,* 116 N. Y. 167.)

Vann, J.   This is a controversy between two underground occupants of a public street in the city of Syracuse, each having a franchise granted by the common council.   The plaintiff's franchise, which is the earlier in date, permitted it to construct a subway or conduit under certain streets and to place wires therein " necessary in the operation and conduct " of its telegraph business, according to plans and specifications to be approved by the commissioner of public works or the common council.   Among the many conditions and limitations of the grant was the provision that no " exclusive franchise to use the streets and public places of the city, or any of them,

for a subway, or for any other purpose " should be deemed to be conferred upon the plaintiff, and that " all rights and privileges not herein specifically given are expressly reserved by the common council." Under this permit the plaintiff constructed a subway, which consists of a structure sixteen inches high and nine inches wide laid a few feet below the surface of the streets. It contains six wooden ducts, one of which, as required by the grant, is for the exclusive use of the city and is controlled by it accordingly.

Subsequently, the common council, upon similar conditions, gave the defendant a franchise to construct a subway to conduct and distribute " electricity for light, heat or power for public or private use." The defendant built its line in some of the streets already occupied by the subway of the plaintiff. Its structure, twenty-six inches wide by seventeen inches high, was located, as the franchise provided, by the commissioner of public works and in some instances was placed above and parallel to the line of the plaintiff and at a distance of but one or two feet therefrom. On the south side the two structures are bounded by the same vertical line, but on the north side the defendant's subway projects about seventeen inches over that of the plaintiff. In one locality for a distance of about 420 feet, if the earth beneath the defendant's subway were removed it could not sustain itself, for it is not self-supporting except in sections four feet long, and artificial support would be necessary in order to repair the plaintiff's line or remove a duct therefrom. At this point the street contains many substructures, including a sewer, water and gas mains, other subways and the like, while on the surface there is a double-track street railroad. On the side of the street selected the unoccupied space where the defendant's subway could have been located without interfering with any substructure is about three feet wide and is just south of and between plaintiff's subway and a water main. On the other side of the street there was also unoccupied space which was certain, however, to be needed in the future.

While the defendant was constructing its work the plaintiff

protested against the location selected and some delay resulted, but finally the defendant placed its subway, pursuant to its franchise, in the exact situation and position directed by the commissioner of public works. After the defendant had completed its line, the plaintiff, with no allegation of insolvency in its complaint, or that a multiplicity of suits would result, brought this action to restrain the defendant from using or maintaining its subway as located in the street in question and to compel it to remove its line therefrom. The theory of the complaint is that the location of the defendant's subway interferes with access to the subway of the plaintiff for the purpose of making repairs and that it will " necessarily cause great inconvenience and expense." The trial court did not grant an injunction, but required the defendant and the city of Syracuse, which was joined as a defendant but for some reason did not defend, within thirty days after entry of judgment and notice thereof, to execute a bond in the penalty of $5,000 with two sureties to " indemnify the plaintiff  *  *  * against any loss, damage or expense which it or its successors may sustain by reason of the location " of the defendant's line and restraining both defendants from using the subway or placing any wires therein during said period of thirty days. The Appellate Division unanimously affirmed the judgment and the Syracuse Electric Light and Power Company appealed to this court.

The question presented for review is whether, upon the facts alleged in the complaint and those found by the trial judge, the court had power to grant the relief provided by its judgment.

The object of the action was to restrain an alleged trespass, which is not permitted except under peculiar circumstances not shown to exist in this case. The result of the action was an adjudication, in effect, that a resort to equity was unnecessary, because the requirement of a bond to indemnify against damages shows that there was an adequate remedy at law through the recovery of damages, as compensation. Thus the court, sitting as a court of equity, awarded nothing but

what could be had in an action at law, except to provide security that the damages when admeasured at law would be paid. An action at law would be required to recover any damages under the bond and the same damages could be recovered to the same amount in an action at law without a bond. The court adjudged that the structure of the defendant was unlawful and that it might result in damages to the plaintiff in the future, but the only relief awarded was to require the defendant to secure the payment of such damages if they should accrue. It did not grant an injunction provided the defendants should not execute a bond, but issued an absolute command requiring the two corporations, one a city of the second class, to furnish security for all time to come that if damages should result from the defendant's illegal action they would be paid. This adjudication necessarily involved, as a part thereof, that the recovery of damages was an adequate remedy and, hence, that an action in equity was unnecessary.

While I think the judgment should be reversed upon the ground already stated, there are other considerations which should not be lost sight of, for they involve the welfare of the public in all municipal corporations. Space beneath the surface of streets in our large cities is becoming more valuable every year for the purpose of conducting water, heat and light to the dwellings of the inhabitants, as well as for the construction of sewers, underground railroads, subway lines, pneumatic tubes and other agencies of great public utility. The existence of surface railroads frequently renders access to the various structures beneath the streets more or less difficult and makes it undesirable that subways or other structures should be located under the tracks. It is in view of such circumstances and possibilities that a franchise granted by a city permitting a corporation to place some structure beneath the surface of the streets, is to be considered and construed. When, therefore, the common council in granting a franchise to the plaintiff, provided that nothing therein contained should be deemed to give it "any exclusive franchise to use the streets for a sub-

way or for any other purpose" and reserving all rights and
privileges not specifically given, it did not empower the plain-
tiff to dictate what other structures should be located beneath
the street or where they should be placed. All that the
plaintiff can lawfully demand is that its structure shall not be
unreasonably interfered with. This is involved in the terms
of its grant, when construed in the light of all the facts. It
cannot keep out other structures, even if their construction
involves expense and inconvenience to itself. It cannot say
there shall be no subway above, beneath or on either side of
its own, for that right the city reserved and doubtless it
would have been reserved by implication, if it had not been
reserved expressly. The franchise "is to be construed in the
interest of the public, and hence in favor of the grantor and
not, as in ordinary cases, in favor of the grantee." (*Trustees
of Southampton* v. *Jessup,* 162 N. Y. 122, 127; *Syracuse
Water Co.* v. *City of Syracuse,* 116 N. Y. 167, 178.) The
plaintiff took nothing by its grant but what was expressly
given, or necessarily involved in what was expressly given.
There is nothing in its franchise to prevent the city from lay-
ing a subway on any side of the plaintiff's subway and imme-
diately adjoining it, or from authorizing some other corpora-
tion to do it. If the city, which has control of the streets both
above and below the surface, sees fit to economize space with
reference to the wants of the future, it has a right to do so and
for this purpose to place, or authorize another corporation to
place, conduit lines so near that of the plaintiff as to make
access somewhat inconvenient and expensive. . The city can-
not destroy the plaintiff's line nor prevent reasonable access to
it, but it is not obliged to consult the mere convenience of the
plaintiff, nor study to save it from expense to the detriment
of the public. In other words, the plaintiff may make a rea-
sonable, but not an unreasonable, use of the right granted.
While the city could not grant to another the right to use the
same space occupied by the plaintiff's line, it could authorize
the use of any other space, provided access to the line was left
open, even if it was less convenient and more expensive.

The defendant's subway does not interfere with the operation of the plaintiff's line in any way, as there is the same convenience of access for that purpose as before. When, however, repairs or changes become necessary, it cannot reach its structure by digging down directly thereto, but must dig down by the side and make a deeper excavation. If the repairs should require the removal of the earth between its line and that of the plaintiff for a distance exceeding four feet, it would be necessary for it to notify the defendant to support its line while the repairs were in progress, or else to support it at its own expense. This is the extent of the interference with the plaintiff's subway by the location of the defendant's line. It simply involves a slight increase of expense in order to reach the plaintiff's structure for the purpose of making repairs.

The charter of the city of Syracuse, in force when the franchises in question were granted, provided that the common council should have power " to require that telegraph, telephone or electric light wires or cables, or other appliances for conducting electricity, except trolley and feed wires, poles and fixtures used in operating street railroads, and the poles thereof heretofore erected in any street, alley or public ground * * * be removed from overhead in such street, alley or public ground, or any part thereof, within a reasonable time, not less than three months after the enactment of such ordinance * * *. No company, corporation or individual shall place its wires and electrical conductors in conduits under the surface of the streets, alleys or public grounds in such manner as to unnecessarily interfere with the use of such street, alley, or public grounds, or local improvements of any character or with the sewers or water or gas mains or branches thereof, nor without first obtaining the consent of the common council, subject to such regulations and restrictions as the common council may by ordinance make, or impose, in respect thereto, for the benefit of the public, the city or its citizens, and under the direction and supervision of the commissioner of public works * * *. And any company, corporation or individual so placing its wires under-

ground in any street, alley or public ground of said city, shall, upon notice from the city, or any of its departments that a local improvement or sewer or water main, or branch thereof, is to be constructed in such manner as will necessitate the moving or altering of the conduit or conduits, by said individual, company or corporation, move or alter the same at its own expense so as to permit the construction of the improvement where ordered, and should any person, company or corporation omit to comply with such notice, the conduit or conduits may be altered or moved by the city, and the cost and expense thereof recovered from such individual, company or corporation ; to regulate the erection of telegraph, electric light and telephone poles, wires, cables and other electrical conductors" and require them to " be placed underground, subject to such restrictions and regulations as it may make by general ordinance, but nothing in this section contained shall affect any grant or consent heretofore made or given pursuant to general laws, as to any matter provided for in and by such grant or consent." (L. 1893, ch. 531, § 2, amending § 22 of the Revised Charter.)

This statute is part of the franchise granted to either party to this action and is to be construed in connection therewith. It shows that the city has control of the subject and that the plaintiff accepted its franchise subject to the right of the city to grant similar franchises to other corporations and subject to the right of the commissioner of public works to locate the position of any new structure beneath the surface of the street. The question is not before us whether the commissioner selected the best possible location for the defendant's line, but simply whether he exercised his power in a reasonable way. The law made it his duty to determine the location, not the duty of the court. The statute gave him discretionary power in the premises which is not subject to judicial control " except in extraordinary and exceptional instances of gross abuse." (Dillon Municipal Corporations, § 832 ; High on Injunctions, §§ 1240, 1270.)

I think that when the franchise of the plaintiff is construed

in connection with the city charter in force when it was granted, and in the light of facts relating to the use of the street then existing or in reasonable contemplation by the parties, the commissioner of public works had the right to locate the plaintiff's line where it now is and that the courts have no power to adjudge that location unlawful, under the circumstances of this case.   I vote for reversal and a new trial, costs to abide event.

O'BRIEN, J. (dissenting).   The plaintiff brought this action for the purpose of restraining the Syracuse Electric Light & Power Company, the city and its commissioner of public works from interfering with the underground subway constructed by the plaintiff for the wires and appliances of its business operations.   The controversy is really between the plaintiff, a telegraph company, and the defendant, an electric light company.   There is practically no dispute about the facts, and they appear in the record at great length and with much detail.   The trial court did not grant the relief demanded by the plaintiff, which was the removal of the subway of the electric light company at a certain point in the street from the present location, which is directly over the plaintiff's subway ; and it is found as a fact that the construction and existence of the defendant's subway injures the rights and property of the plaintiff, and is really an unlawful interference therewith.   The controlling facts in the case may be stated very briefly as follows :

On the 19th day of June, 1893, the city of Syracuse granted to the plaintiff a franchise or authority to construct and operate a subway, with necessary conduits and appliances, and to maintain therein its wires and cables necessary for the conduct of its business under the surface of certain streets named, within the corporate limits of the city, subject to certain terms and conditions therein contained.   One of these conditions was that the plaintiff should furnish, for the use of the city, one of the ducts in said subway and subsidiary ducts and branches to be reserved to the exclusive use of the city, to be used for

its own wires, without compensation to the plaintiff. This was the consideration which the city received for the privilege of permitting the plaintiff to use the streets for the purposes of its subway. Subsequently the plaintiff was permitted to construct a subway in other streets than those named in the original franchise. The plaintiff accepted the franchise, and in the year 1896 at a large cost constructed the subway under various streets in the city, and it included the duct for the city, which was also constructed as required by the terms of the franchise, and the city has since exercised control over the same. The plaintiff's subway was laid in a trench several feet beneath the surface of the streets, and consisted of six wooden ducts, laid two side by side and three in height, each duct being four and one-half inches square, with planking above and below, making a structure sixteen inches high and nine inches wide.

On the 6th day of June, 1898, the defendant, a private corporation, secured from the city a franchise to construct a subway under the streets through which to conduct electricity for heat, light and power. It appears that at a certain point in one of the streets, for a distance of four hundred and twenty feet, the subway of the electric light company is laid parallel with and directly above and overlapping the plaintiff's subway, the distance between the bottom of the defendant's and the top of the plaintiff's subway varying from one foot to a little over two feet.

The court found that the subway of the defendant was not self-supporting; that in case the earth is removed from around or under it it is incapable of sustaining its own weight for a greater distance than four feet; that no repairs or changes can be made in the plaintiff's subway without first sustaining the defendant's subway by artificial means; that in order to remove any duct from plaintiff's subway an excavation of at least twelve feet must be made; that in order to gain access to or make repairs upon plaintiff's subway it will be necessary to tunnel under the subway of the defendant; that accidents often occur in and about structures of the character of these

subways, making it frequently necessary to gain access to them and the ducts therein contained for the purpose of enlarging, inspection, repairs and removing obstructions and for remedying disturbances resulting from the settling of the ground, breaking of other substructures and other causes and in such event it becomes necessary to excavate from the surface of the street down to and around the subways and remove the ducts therefrom and that the maintenance of appellant's subway as built will result in loss, damage and expense to the plaintiff.

It appears that while the subway of the defendant was in process of construction the plaintiff notified it and the city of the danger to the plaintiff's rights that would exist in consequence of locating the defendant's subway directly over that of the plaintiff and the plaintiff made an objection to the projected work, both to the city and to the electric light company, but after some negotiation and delay the defendant proceeded with the construction of its subway according to the original plans. The franchise granted by the city to the plaintiff and which the latter accepted constituted a contract between the plaintiff and the city which could not be affected or changed by one of the parties to it without the consent of the other. When the plaintiff, with the permission of the city, accepted the conditions of the grant and completed its subway, the structure underneath the surface of the street was property which could not be invaded or interfered with any more than any other corporate property which the plaintiff possessed. Neither the defendant, the electric light company, nor the city acting through its commissioner of public works had the right, for the purpose of constructing the defendant's subway, to interfere with or impair the free and unobstructed use by the plaintiff of the subway constructed by it under the franchise granted. The city had the undoubted right subsequently to grant a similar franchise to the defendant but it had no right to locate the place where the same was to be constructed in such a way as to interfere with or injure the structure of the plaintiff. The city, in granting the franchise to the plaintiff, attached to it a condition reserv-

ing to itself the right to use one of the plaintiff's ducts for its own purposes and this consideration furnishes an additional reason, if such is required, why the plaintiff's rights, as granted, cannot be disturbed.

We think that such an interference with the plaintiff's property rights, threatened or consummated, constitutes, under the circumstances of this case, a sufficient ground for the interference of a court of equity by injunction. It is quite true that the plaintiff has not yet, so far as appears, sustained any damage by reason of the facts complained of, but a court of equity will grant relief preventative in character when satisfied that such interference, although in the nature of a trespass, will injure the plaintiff's property and interfere with its lawful operations which are affected by a public interest.

The difficulty in this case, if any, consists in the form of the judgment, or rather the character of the relief which was given to the plaintiff at the trial. The court did not direct the defendant to remove its structure or change its location, but determined that for the plaintiff's protection it should execute and deliver to it a bond in the sum of five thousand dollars as indemnity to the plaintiff against any loss, damage or expense which it might sustain by reason of the construction and maintenance of the defendant's subway and restraining the use of the subway until the filing of the bond. The city has not appealed from the judgment, and, so far as the record discloses, it has acquiesced in the judgment, which requires it to become a party to the bond. It may be, as suggested, that the city has no power to enter into any such arrangement, but this court has nothing to do with that question so long as the city itself does not complain. It is quite clear that the defendant, the electric light company, has no right to complain of the judgment in that respect. We think that, upon the facts found in this case, the court had jurisdiction to direct the removal of the defendant's subway for the reason that it was an invasion of and menace to the plaintiff's right of enjoyment of the privileges secured to it by the franchise. The findings of fact fully disclose the difficulties

and obstructions which the defendant's subway would consti-
tute to the free enjoyment by the plaintiff of its property
rights in the underground structure. It is quite likely that
by the lapse of time the defendant would acquire a right by
prescription to maintain its structure where it is, however
inconvenient, dangerous or damaging it might prove to be to
the plaintiff, and in such cases a court of equity will interfere
in order to prevent an unlawful invasion ripening into a legal
right. (*Amsterdam Knitting Co.* v. *Dean*, 162 N. Y. 278.)

The judgment, in effect, requires the defendant to indem-
nify the plaintiff against damages that may arise from a
future trespass, and in this respect the relief granted is doubt-
less exceptional and peculiar. It appears that before the case
came to trial the street at the point in question had been reg-
ulated and paved at the expense of the property owners, and
the court doubtless hesitated before granting the drastic relief
which the plaintiff demanded, that is, to have the subway
entirely removed to some other part of the street. Instead
of decreeing that to be done it granted a measure of relief
more liberal to the defendant, compliance with which would
be cheaper and more convenient. We are not prepared to
say that the court was without power to grant the relief speci-
fied in the judgment. At all events, it does not seem to us
that the defendant has any right to complain because it is
simply required to give a bond of indemnity rather than
change the location of its subway. When a court of equity
obtains jurisdiction of a case it may grant such relief as the
nature of the case may require, and in some cases it may
award damages, as in an action at law, when such a course is
necessary in order to do complete justice. Whatever may
be said as to the outcome of this controversy expressed in the
judgment, it does not appear to us to be unjust to the defend-
ant or to constitute any real ground of complaint.

The judgment should be affirmed, with costs.

Parker, Ch. J., Martin and Werner, JJ., concur with
Vann, J.; Bartlett and Haight, JJ., concur with O'Brien, J.
.. Judgment reversed, etc.