WESTERN NEW YORK WATER COMPANY, Appellant, *v.* ARTHUR W. BRANDT, as Superintendent of Public Works of the State of New York, Respondent.*

Third Department, March 6, 1940.

*Kenefick, Cooke, Mitchell, Bass & Letchworth* [*Thomas R. Wheeler* of counsel], for the appellant.

*John J. Bennett, Jr., Attorney-General* [*Henry Epstein, Solicitor-General, Jack Goodman, Assistant Attorney-General,* of counsel], for the respondent.

HEFFERNAN, J. Plaintiff instituted this action to restrain defendant from entering into contracts for the elimination of the

* See, also, *Matter of Town of Cheektowaga Grade Crossings* (259 App. Div. 141).

grade crossings of the Lehigh Valley Railroad, Erie Railroad, Delaware, Lackawanna and Western Railroad and New York Central Railroad over Union road in the town of Cheektowaga, Erie county, N. Y. There are two grade crossing eliminations involved, one relating to the New York Central Railroad Company and the other to the remaining companies. By stipulation of opposing counsel the cause of action relating to the New York Central Railroad has been deleted from the complaint.

Plaintiff has appealed from an order of the Albany Special Term of the Supreme Court, dismissing, upon respondent's motion, its complaint on the ground that it does not state facts sufficient to constitute a cause of action. In view of its dismissal for insufficiency we are bound to assume the truth of the statements contained in the complaint.

Its material allegations are: That plaintiff is incorporated under the Transportation Corporations Law of the State; that about February, 1902, it acquired the right to lay its pipe lines within all the highways in the town of Cheektowaga, Erie county, N. Y., including Union road, and that it has since continuously maintained its lines in such highways; that it maintains within the bed of Union road a sixteen-inch water main which is one of its principal transmission lines, and by means thereof furnishes water service to the inhabitants of the town of Tonawanda, village of Kenmore, town of Amherst, village of Williamsville and part of the town of Cheektowaga, which communities have a population of approximately 65,000 inhabitants, and that the water furnished by plaintiff to these municipalities constitutes their sole source of supply for sanitation, fire protection and domestic purposes; that about October 28, 1931, plaintiff's plant was approved by the State Water Power and Control Commission; that Union road became a State highway in 1921 and is now under the supervision of the defendant; that about the year 1930 a proceeding was instituted before the Public Service Commission for the elimination of the grade crossings involved over Union road; that such proceeding has been pending since that time; that about May 7, 1930, the Public Service Commission made an order directing the elimination of the grade crossings involved in the proceeding pending before it, but no construction work had been begun or any contract let prior to January 1, 1939; that about June 21, 1938, the Public Service Commission approved a plan for the elimination of these grade crossings; that the plan proposed provides for depressing the grade of the existing highway for a distance of approximately 1,800 feet to a maximum depth of approximately twenty-one feet and for crossings by the railroads over the highway as so depressed;

that plaintiff's existing main is situated approximately four feet below the present grade of Union road and the consummation of the elimination project will leave such main suspended in the air without support; it is further alleged that defendant has directed plaintiff, at its own expense, to remove its water pipes located in Union road and to relocate the same so that the construction work for the elimination of the grade crossings may be accomplished; it is also charged that plaintiff, pursuant to the provisions of section 3 of chapter 289 of the Laws of 1939, applied to the Public Service Commission for an order amending the plan of elimination by including therein the work of relocating plaintiff's water main and the expense incident thereto.

In the briefs it is conceded that this application of plaintiff was denied by the Public Service Commission on November 1, 1939, and that an appeal from such determination is now pending before the Appellate Division of the Supreme Court, Fourth Department.

The complaint also asserts that if plaintiff is compelled to relocate its pipe line at its own expense, from which investment it would receive no benefit, compliance with such direction would be tantamount to the confiscation of its property.

The theory of the complaint is that by virtue of article VII, section 14, of the State Constitution, as amended, effective January 1, 1939, and chapter 289 of the Laws of 1939, enacted pursuant thereto, the plan for grade crossing elimination here in question must include the relocation of the portion of plaintiff's property affected thereby.

In dismissing the complaint the Special Term did not pass upon the merits of the controversy nor did it express any view as to the interpretation to be given to the constitutional amendment or the statute. It merely held that the merits could be decided by the Public Service Commission and that adequate review of any determination there made could be had in the courts. In other words, the effect of the decision is to make the Public Service Commission rather than a court of equity the tribunal of original jurisdiction.

In our opinion it is not necessary on this appeal to determine whether or not the relief obtainable by plaintiff before the Public Service Commission is adequate or inadequate, whether the jurisdiction of that body is exclusive in the first instance or whether plaintiff is afforded a choice between the remedy under article 78 of the Civil Practice Act and the equitable remedy of injunction.

There is no question of fact involved here which might have been decided by the Public Service Commission. Only a question of law is presented which the court has plenary jurisdiction to decide.

Apart from the reason given by the Special Term for its action, we are convinced that the complaint should have been dismissed on the merits.

Prior to the adoption of section 14 of article VII of the Constitution, as amended January 1, 1939, and prior to the enactment of chapter 289 of the Laws of 1939, passed in conformity therewith, the Court of Appeals had held (*Transit Commission* v. *Long Island R. R. Co. and New York and Queens Gas Co.*, 253 N. Y. 345) that the expense of relocating a main operated by a utility within a highway which crossed a railroad crossing at grade and which was to be eliminated must be paid by the utility.

Judge CRANE, speaking for the court in that case, said: " The gas company has received from the public authorities its franchise or privilege to lay and maintain its gas main under the surface of the public street. Without this grant from the People it has no rights in the highway. This privilege, or franchise is at all times subject to the police power of the State; in other words, the company maintains its pipes subject to the obligation to remove them whenever the public health or safety require this to be done. Although authorized to lay its pipes in the public streets, the company takes the risk of their location and is bound to make such changes as the public convenience and security require, at its own cost and charge."

And later: " The Appellate Division, by a divided court, has reversed the Special Term order, stating that while the State possesses the power to compel the New York and Queens Gas Company to relocate its structures to conform to the improvement in question, it had not exercised this power by any express language of the statute. In other words, as the New York City Grade Crossing Elimination Act made no provision for the expense of such changes, the cost was to be part of the general expense of the elimination to be borne by the State, city and railroad company.

" We are of the opinion that the very reverse construction must be given to the law; that the common-law rule, as above stated, applies to the cost of all such changes, until the Legislature provides otherwise, and this it has failed to do. Chapter 677 of the Laws of 1928 must be read in connection with the common law existing at the time, with which the Legislature is presumed to have been acquainted. * * * Rules of the common law are to be no further abrogated than the clear import of the language used in the statute absolutely requires."

While the *Queens Gas Company* case dealt with the Transit Commission and the provisions of chapter 677 of the Laws of 1928, its reasoning applies equally well to the Public Service Commission and chapter 678 of the Laws of 1928. Just as the Court of Appeals

could find nothing in the former act, which dealt with New York city, to change the common-law rule as to the liability of a public utility to relocate at its own expense its mains situated in the streets, so there can be found in the latter act, which dealt with other parts of the State, nothing to modify that rule. The conclusion is inescapable, therefore, that at the time of the Constitutional Convention in 1938 the obligation to relocate utility lines incident to a grade crossing elimination rested upon the utility itself.

Plaintiff contends that by virtue of the constitutional amendment and the statute enacted pursuant thereto the relocation of its main and the expense incident thereto must necessarily be included as part of the plan of elimination.

We think that no change in the law as it existed was intended or effected either by the amendment or the statute. The pertinent provisions of the amendment are:

" The Legislature may authorize by law the creation of a debt or debts of the State, not exceeding in the aggregate three hundred million dollars, to provide moneys for the elimination, under State supervision, of railroad crossings at grade within the State, and for incidental improvements connected therewith as authorized by this section * * *.

" The expense of any grade crossing elimination the construction work for which was not commenced before January first, nineteen hundred thirty-nine, including incidental improvements connected therewith as authorized by this section, whether or not an order for such elimination shall theretofore have been made, shall be paid by the State in the first instance, but the State shall be entitled to recover from the railroad company or companies, by way of reimbursement (1) the entire amount of the railroad improvements not an essential part of elimination, and (2) the amount of the net benefit to the company or companies from the elimination exclusive of such railroad improvements, the amount of such net benefit to be adjudicated after the completion of the work in the manner to be prescribed by law, and in no event to exceed fifteen per centum of the expense of the elimination, exclusive of all incidental improvements. The reimbursement by the railroad companies shall be payable at such times, in such manner and with interest at such rate as the Legislature may prescribe. * * *

" A grade crossing elimination the construction work for which shall be commenced after January first, nineteen hundred thirty-nine, shall include incidental improvements rendered necessary or desirable because of such elimination, and reasonably included in the engineering plans thereof."

Section 2 of the Enabling Act continued in effect chapter 678 of the Laws of 1928 except that as to eliminations commenced after

January 1, 1939, " the elimination shall include incidental improvements rendered necessary or desirable because of such elimination, and reasonably included in the engineering plans therefor, as shall be determined by the commission having jurisdiction."

Plaintiff's argument that the amendment and the statute render absolute the decision in the *Queens Gas Company* case is predicated on the theory that the relocation of its main is comprehended in the last quoted provision.

We have examined the proceedings of the convention and the debates relative to the term " incidental improvements " and they are barren of any suggestion that the relocation of utility mains was intended to be included therein. If a change in the law were intended, certainly the Legislature and the Constitutional Convention used ambiguous language to effect such change. While the relocation of mains may be an incident to the elimination rendered necessary thereby, that such work is an " improvement " is extremely doubtful. This statute hardly meets the requirement laid down in the *Queens Gas Company* case " that to relieve the public service corporations having franchises in the streets of their common-law liabilities and to pass them over to the taxpayer can only be accomplished by the express direction of the Legislature."

The rule is well established that in construing the Constitution of the State recourse may be had to the debates and to the proceedings of the convention which drafted the instrument. While these proceedings are powerless to vary the terms of the Constitution they are nevertheless valuable aids in determining the purpose and consequent meaning of a doubtful provision. They may be of material assistance in showing that a word or clause was used in a certain sense. The framers of the instrument are presumed to have intended no change or innovation in the common law further than appears from expressed declarations or reasonable implications. The common law is repealed by the Constitution to the extent that it is inconsistent therewith and only to that extent. At the time of the adoption of the amendment in question a utility was required to bear the expense of relocating its main. The new provision should be construed as not abolishing the established law in the absence of a specific declaration to that effect.

The order appealed from should be affirmed, with ten dollars costs and disbursements.

HILL, P. J., CRAPSER, BLISS and SCHENCK, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.