BENJAMIN E. TILTON, as Trustee of NEW YORK STATE RAILWAYS, Debtor, Appellant, *v.* THE STATE OF NEW YORK, Respondent.*
(Claim No. 24468.)

Fourth Department, May 15, 1940.

*Willis H. Michell* [*William L. Broad* of counsel], for the appellant.

*John J. Bennett, Jr., Attorney-General* [*Leon M. Layden, Assistant Attorney-General,* of counsel; *Joseph I. Butler, Assistant Attorney-General,* with him on the brief], for the respondent.

McCURN, J.   This is an appeal from a judgment against claimant after trial in the Court of Claims.   The claimant and his predecessor had for many years operated a street railway system over various streets of the city of Syracuse pursuant to authority given by various franchises.   Claimant operated his street cars over tracks laid in James street and North Salina street in Syracuse.

In the summer of 1934 a grade crossing elimination project was in progress in the city of Syracuse.   When the time came for the erection of heavy girders to carry the new elevated railroad structure across James street and North Salina street, the Syracuse grade crossing commission ordered those streets to be temporarily closed in the interest of public safety.   The two streets were accordingly closed and the claimant was consequently unable to operate his street cars over the James street crossing for a period from October 15 to October 23, 1934, or over the North Salina street

*Affg. 171 Misc. 391.

crossing for a period from November 13 to November 24, 1934. Claimant, in order to keep his street cars in operation during the time said streets were closed, provided substituted service by constructing temporary tracks over which he operated his cars. The stipulated cost of providing the temporary substituted service was $5,600.

In *Transit Comm.* v. *Long Island R. R. Co.* (253 N. Y. 345) it was declared that the franchise of a public service corporation to use the streets is at all times subject to the police power of the State; that such corporations holding franchises are bound to relocate their structures whenever the public health, safety or convenience requires at their own expense in the absence of any statutory provision relieving them of the cost.

The elimination of railroad grade crossings in the city of Syracuse was authorized and the Syracuse grade crossing commission was created by chapter 825 of the Laws of 1928. It is argued here that section 9 of that act applies to the present controversy and is statutory authority sufficient in this case to exempt the claimant from the common-law duty to finance his own temporary relocation of his tracks. That section provides as follows: " If the work of such elimination causes damage to property not acquired as above provided, the State shall be liable therefor in the first instance, but this provision shall not be deemed to create any liability not already existing in law." Claimant asserts that by force of section 9 of chapter 825 of the Laws of 1928 the State is liable in the first instance to claimant for his damages. The words " damage to property not acquired," as used in section 9 of chapter 825 of the Laws of 1928 and in section 8 of chapter 439 of the Laws of 1926, are not intended to include damages such as are involved here. We are unable to find any cases where those words have been applied to cover damages occurring to utility lines laid in public streets. Damages to adjoining private property, such as damage resulting from change of grade, cutting off light, etc., or access to, have frequently been the subject of discussion in the courts in connection with grade crossing cases. A few of such cases are: *Moller* v. *N. Y. C. R. R. Co.* (282 N. Y. 188); *Egerer* v. *N. Y. C. & H. R. R. R. Co.* (130 id. 108); *Champion Oil Co., Inc.,* v. *State of New York* (161 Misc. 143).

When *Transit Comm.* v. *Long Island R. R. Co.* (253 N. Y. 345) was in process of litigation section 7 of the New York City Grade Crossing Elimination Act (Laws of 1928, chap. 677) was in force. It is similar to section 9 of chapter 825 of the Laws of 1928 (*supra*). Judge CRANE, in his opinion in the Court of Appeals, made no reference to this section. However, the Appellate Division gave

it consideration in that case (228 App. Div. 297), where the court said: " It only remains to consider whether the mandamus order appealed from was proper, because, assuming appellant's contention to be sound, it might present its claim for reimbursement to the Court of Claims, under section 7 of the New York City Grade Crossing Elimination Act. That section provides, in substance, that if the work of said elimination causes damages to property not acquired, and the amount thereof is not agreed upon, a claim therefor may be presented to the Court of Claims, which may hear and determine the same. In my opinion, section 7 (*supra*) has no application to a claim of this character. The statute refers to ' damage to property not acquired.' "

The Appellate Division was reversed but obviously not upon that ground.

Section 6 of chapter 678 of the Laws of 1928 applied to the elimination project involved in *Western New York Water Company* v. *Brandt* (259 App. Div. 11) and to *Matter of Town of Cheektowaga Grade Crossings* (Id. 141). That section reads the same as section 9 of chapter 825 of the Laws of 1928.

It seems to me that the damage here is of the same nature as the damage in *Transit Comm.* v. *Long Island R. R. Co.*, *Western New York Water Company* v. *Brandt* and *Matter of Town of Cheektowaga Grade Crossings* (*supra*).

Damage of that nature has never been classified as being within the meaning of the statutes relied upon, although as above pointed out there has been ample opportunity for the courts to do so.

The term " property," as applied to claimant's franchise, means it would seem the title or ownership of the franchise itself. A destruction or abrogation wholly or in part of the franchise itself might be a damage to " property not acquired."

It is very doubtful if the temporary closing of a street by the public authorities for a proper purpose can be said to be an injury inconsistent with claimant's rights under its franchise. Claimant's franchise to use the streets for its street car tracks was subject to the use of the street by the public for all proper purposes. (*Western Union Tel. Co.* v. *Syracuse El. L. & P. Co.*, 178 N. Y. 325; *Brooklyn El. R. R. Co.* v. *City of Brooklyn*, 2 App. Div. 98.)

In the *Brooklyn* case a sewer was being built by the city. On account of the proximity of plaintiff's elevated railroad to the sewer excavation, proper regard for the safety of the public made it necessary to shore up the elevated structure. The question litigated was whether that was an expense which the railroad company should pay or whether it should be paid by the city whose sewer digging operations made the shoring up necessary.

Judge CULLEN, in his opinion in that case, said (at p. 101):

" Any grant to the plaintiff must necessarily be construed as subject to the right of the public to enter upon the street for such purposes, and any interference with the plaintiff's road in the proper construction of such work must be considered a burden which plaintiff assumed to bear. It would be most unreasonable to suppose that the city, knowing that from time to time it would have to tear up the street and make excavations therein, should make a grant to the plaintiff, the effect of which would be to subject the city to increased expense in such improvements.  *  *  *

" But we prefer to rest our decision upon the other ground, that grants to railroads or other corporations in public highways must be construed as subject to the paramount right of the public to use those highways for all proper purposes.  We do not say that there might not be a use of a street by the public of such a character as to destroy, practically, the plaintiff's franchise and property, and so far unforeseen at the time of the grant as to require compensation to the plaintiff for the injury to or destruction of its property and franchises.  But such uses of the public street as were notorious and of common exercise at the time of the grant must have been contemplated by all parties, and any grant must be held subject to such uses of the street as would be naturally contemplated."

We are of the opinion that under the common law claimant was obligated to bear his own expense attendant upon the temporary relocation of his tracks and that there has been no statutory change of that common-law rule.

The judgment of the Court of Claims should be affirmed.

All concur, except DOWLING and HARRIS, JJ., who dissent and vote for reversal and for judgment in favor of claimant for $5,600 and interest, in an opinion by DOWLING, J.  Present —CROSBY, P. J., TAYLOR, DOWLING, HARRIS and McCURN, JJ.

DOWLING, J. (dissenting).  By chapter 533 of the Laws of 1912 the Legislature created the " Syracuse Grade Crossing Commission " and endowed it with certain powers relative to the relief of the city of Syracuse from steam railroads crossing its streets at grade. This chapter, as amended by chapter 515 of the Laws of 1917 and chapter 27 of the Laws of 1921, was repealed by chapter 439 of the Laws of 1926.  The 1926 act continued the commission for the purpose originally created and gave to it added powers.  Chapter 439 of the Laws of 1926 was amended by chapter 825 of the Laws of 1928.  Under that act the Syracuse grade crossing commission (hereinafter called the Syracuse commission) was made an agency of the State and the supervision of the Syracuse commission was

" recognized and deemed to be the supervision of the State within the meaning of section fourteen, article seven of the Constitution of the State of New York." (Laws of 1928, chap. 825, § 11.) The Syracuse commission was authorized to adopt plans for the purpose of eliminating crossings at grade in Syracuse. (§ 1.) The plan adopted by the commission had to be approved by the common council of Syracuse. (§ 3.) Upon the filing of the plan with the Public Service Commission, its order was necessary to put the project in operation. (§ 4.) All work of construction was to be under the general supervision of the Syracuse commission and it was empowered and authorized to let the necessary contracts therefor. All proposals were subject to the approval of the Public Service Commission. All contracts for the work had to be filed with the Public Service Commission. (§ 4.) The Syracuse commission was empowered to " close * * * any street * * * remove from any street * * * any gas or water pipes * * * or other objects * * * which may be necessary or proper to carry out the plans and contracts hereby authorized." (§ 14.) The Syracuse commission was also authorized " to divert the travel from one street to another street in connection with the elimination of a grade crossing, for carrying out the purposes of this act, but the commission shall, in all cases, restore such public street * * * to its former state of usefulness * * *." (§ 14.) The members of the Syracuse commission were relieved from personal liability for any act performed while in the discharge of their duties. (§ 17.) The Syracuse commission was empowered " to adopt such by-laws, rules and regulations as it may deem proper to carry out the purposes of this act, and in the exercise of any of the powers hereby conferred or intended to be, and shall have power to enforce the same as provided by law." (§ 19.) The act further provided: " If the work of such elimination causes damage to property not acquired as above provided [referring to lands, etc., to be acquired for the project], the State shall be liable therefor in the first instance, but this provision shall not be deemed to create any liability not already existing in law. Claims for such damage may be adjusted by the Syracuse commission with the approval of the railroad corporation or corporations and the county if the amount thereof can be agreed upon with the persons making such claims, and any amount so agreed upon shall be paid as a part of the cost of such elimination as prescribed by this act. If the amount of any such claim is not agreed upon, such claim may be presented to the Court of Claims which is hereby authorized to hear such claim and determine if the amount of such claim or any part thereof is a legal claim against the State and if it so determines, to make an award and

enter judgment thereon against the State, provided, however, that such claim is filed with the Court of Claims within six months after final approval of the elimination work by the Public Service Commission." (§ 9.) The act further provides: " This act shall be deemed a public act and shall be liberally construed to effectuate the general purposes for which it is enacted." (§ 23.)

The Syracuse commission let the general elimination contract to the Walsh Construction Company on December 8, 1933. Only section 11 of the contract is before us. This section provides:

" Sec. 11 of General Contract titled ' Regulations and Permits:'

" Whenever, in doing the work embraced within this contract, it may be necessary to temporarily occupy, use or obstruct any street, highway, or public place or to do anything whatever in connection with public property, or whenever it shall be necessary in order to comply with building laws or other Local, State of National ordinances, the Contractor shall, at his own cost and expense, procure all necessary permits therefor; and in doing such work, shall be governed by, and comply with the laws, rules and regulations of the proper municipal or other authorities, and the Contractor shall be held responsible for and save the Company harmless from and against any and all violations of said laws, rules and regulations.

" Whenever the doing of the work embraced within this contract in any manner affects the use or operation of lines of railroad of other railroad corporations, the Contractor shall, at his own cost and expense, comply with all the conditions that may be imposed by such railroad corporations."

The elimination project involved the raising of the tracks of the West Shore Railroad Company through the city of Syracuse. The tracks of the New York State Railways, a street railroad corporation, crossed at grade the tracks of the West Shore Railroad Company at James street and at North Salina street. The plans involved the construction of bridges across these streets. The overall length of the span at James street was 105 feet and 110 feet at North Salina street. The individual street girders for James street weighed 141 tons and for North Salina street 147 tons. Deeming that it would be unsafe to permit the New York State Railways to operate its cars over the James and North Salina street crossings while the steel girders were being erected, the Syracuse commission, on August 20, 1934, duly adopted the following resolution:

" Resolved, That the Syracuse Grade Crossing Commission, pursuant to the power and authority in it vested under Section 14 of Chapter 825 of the Laws of 1928, does hereby order and direct that

James Street and North Salina Street be closed over the right of way of the West Shore Railroad in those streets, and for a reasonable and safe distance on either side of said right of way in said streets, during the erection of the girders for the bridges in the elevated structure on the West Shore right of way over said streets, and be it further Resolved, That the Chief Engineer of this Commission be, and he is hereby authorized and directed to designate such detours as may be necessary for such pedestrian and vehicular traffic in said James and North Salina Streets, and properly mark the same, and be it further Resolved, That pursuant to the provisions of Section 11 of the contract dated December 8th, 1933, between the New York Central Railroad Company and the Walsh Construction Company, contractor, that said contractor arrange with the receiver of the New York State Railways for the interruption of street car service across the West Shore Railroad in said James and North Salina Streets during the erection of said steel girders for the bridges over said streets, the expense of any such arrangement to be borne by said Walsh Construction Company, and be it further Resolved, That a certified copy of this resolution be served upon the said Walsh Construction Company and the receiver of the New York State Railways."

On July 30, 1934, Nelson F. Pitts, the chief engineer for the Syracuse commission, recommended to the Syracuse commission that it approve an estimate of cost " for providing and operating street car detours during steel erection at James and Salina Street bridges." On that date and pursuant to the recommendation of its engineer the Syracuse commission adopted the following resolution:

" Resolved, That the Syracuse Grade Crossing Commission does hereby approve an approximate estimate, not to exceed $6,000, for providing and operating street car detours during the steel erection period for the James Street and Salina Street bridges."

On August 8, 1934, the Public Service Commission notified Mr. Pitts it would not approve the estimate but it made no order to that effect.

On August 27, 1934, the Walsh Construction Company acknowledged receipt of a copy of the resolution of August 20, 1934 (*supra*), and notified the Syracuse commission by letter stating, in substance, that they had no power to make any requests of or give orders to the street railway company since that power was lodged in the Syracuse commission. This communication was referred to the special counsel of the Syracuse commission, Mr. Walrath. He advised the commission that its duty ended with the closing of the streets, whereupon and on August 30, 1934, the Syracuse commission duly adopted the following resolution:

" Resolved, That the Syracuse Grade Crossing Commission does hereby rescind the resolution adopted by them on July 30, 1934, which authorized the expenditure of $6,000, to be paid out of elimination funds, for providing and operating street car detours, during the erection period at James and Salina Streets."

Mr. Pitts suggested to Mr. Bean, the engineer for the New York State Railways, at a conference called relative to furnishing temporary street car service during the erection of the girders, that the railway company operate its cars by way of Butternut and Townsend streets. Mr. Bean found this suggestion impractical because it involved special track work which his company had not on hand. Mr. Bean and Mr. Pitts discussed a plan on several occasions, with the result that the street railway company, pursuant to the consent of the common council of Syracuse, dated September 17, 1934, built temporary tracks along Oswego boulevard, this being the shortest and least expensive route for temporary service. The construction and operation of this temporary line cost the street railway company $5,600.

The James street crossing was closed from October 15 to October 23, 1934, and the North Salina street crossing was closed from November 13 to November 24, 1934. No point is made that there was any unreasonable delay in erecting the street girders. That the closing of these streets was a prudent step is borne out by the fact that one of the State street girders fell to the street while being erected.

In May, 1936, the trustee of the street railway company presented a claim of $6,615.55 for damages to the property of the street railway company suffered by reason of the closing of James and North Salina streets. The claim was promptly rejected by the Syracuse commission. Whereupon the trustee of the New York State Railways, on June 5, 1936, presented to the Court of Claims his claim for damages amounting to $6,615.55. The claim as presented conformed to the requirements of section 9 of chapter 825 of the Laws of 1928. Trial of the claim resulted in a judgment dismissing the claim on the merits. From the judgment the claimant has appealed. The court below based its decision upon the case of *Transit Comm.* v. *Long Island R. R. Co.* (253 N. Y. 345) and similar cases, which hold in effect that transportation corporations are bound to make changes in respect to their lines in the public streets at their own expense, as the public convenience and security may require. In the absence of contract or of specific statutory provision to the contrary, the rule is as stated in the *Long Island Railroad* case. The claimant, both in the court below and here, bases his right to recover on the theory that the State had no

authority to temporarily destroy claimant's franchise right under the guise of the police power doctrine without subjecting itself to liability for damages resulting from such temporary destruction. Claimant does not stress either the applicability of the provisions contained in section 11 of the Walsh Construction Company's contract or the provisions of section 9 of chapter 825 of the Laws of 1928. It is conceded that the closing of James and North Salina streets damaged the claimant to the extent of $5,600, and the court so found. The claimant's franchises in James and North Salina streets constituted property rights. (*Sixth Avenue Railroad Company* v. *Kerr*, 72 N. Y. 330, 332.) The court below construed the provision of section 9, " but this provision shall not be deemed to create any liability not already existing in law," to mean any liability existing at the date that chapter 825 of the Laws of 1928 became effective. Under section 13 of chapter 439 of the Laws of 1926 the Syracuse commission was empowered to temporarily close streets at grade crossings and to temporarily divert traffic over such streets. Section 8 of chapter 439 of the Laws of 1926 provided in part: " If the work of such elimination causes damage to property not acquired as above provided [and claimant's franchise was such], the State shall be liable therefor in the first instance, and the owner may present a claim therefor to the Court of Claims, which is hereby authorized to hear, audit and determine it, and award judgment thereon against the State; but this provision shall not be deemed to create any cause of action which would not otherwise exist." With this provision in mind, it is clear that when the Legislature enacted chapter 825 of the Laws of 1928 there already existed in law a provision fixing liability on the State for damages occurring during the work of elimination to property not acquired. That the Syracuse commission so construed the law is evidenced by the fact that the contract with the Walsh Construction Company contained the provision relative to that company's assuming liability so far as damages arising from interference with property rights of other railroad companies were concerned, and by the further fact that it approved an estimated cost of $6,000 to provide for rerouting claimant's cars during the erection of the girders and directed the Walsh Construction Company to arrange for the interruption of street car service with claimant during the time the girders were being erected, the expense of the undertaking to be borne by that company. This was a prudent provision because it served to protect the State from damages which might be caused to other railroads due to unreasonable delay on the part of the Walsh Construction Company. Damages suffered by such delay might be recoverable. (*Western Union Tel. Co.* v. *Syracuse El. L. & P.*

*Co.*, 178 N. Y. 325, 331.) We think that the claimant was entitled to recover his damages under section 9 of chapter 825 of the Laws of 1928. Furthermore, section 11 of the Walsh Construction Company contract afforded the claimant a right of action against the State since, under section 9 of chapter 825 of the Laws of 1928, the State assumed liability in the first instance and since the contract was made for its benefit. (See *Frazer* v. *Public Service Railway Company*, 89 N. J. Eq. 569; 105 A. 387.)

The judgment should be reversed, with costs, and judgment should be granted in favor of claimant for $5,600 and interest.

HARRIS, J., concurs.

Judgment affirmed, with costs.