BINGHAMTON GAS WORKS, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 27210.)

BINGHAMTON GAS WORKS, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 27478.)

Court of Claims, February 24, 1945.

C. *Addison Keeler* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Ward N. Truesdell* of counsel), for defendant.

RYAN, J.  Since 1897 claimant corporation has held a franchise for laying and maintaining its gas mains, pipes and appliances in the public streets of the city of Binghamton.  In 1941 the State of New York was participating with the United States in a Federal flood control project.  This was being accomplished pursuant to chapter 862 of the Laws of 1936, as amended.

The State Department of Public Works notified the claimant that the plans of the United States engineer's office made it necessary for the claimant to move certain gas mains and other equipment to new locations and directed claimant to comply with the requirements of the Federal Government and the contractor.  The claimant complied under protest and now sues for the expense of relocating its mains.  It asks for $170.34 for the Court Street change and $2,106.44 for the Wall Street change.

There is no dispute about the facts.  The question to be determined is whether or not claimant can recover as a matter of law.

At common law the claimant's franchise is subject to the police power of the State and where changes are required for public safety claimant must comply at its own expense. (*Tilton* v. *State of New York,* 171 Misc. 391, affd. 259 App. Div. 507, affd. 285 N. Y. 601.)

But the common-law rule may be altered by statute and when the plain intent of the statute is that the expense of the relocation of the public utility's structures shall be included with the cost of construction of the project, an agreement to repay the holder of the franchise is legal and binding on the agency charged with executing the public improvement. (*Westchester El. R. R. Co.* v. *W. Co. P. Comm.,* 255 N. Y. 297.)

The following provision appears in section 3 of chapter 862 of the Laws of 1936: " The sum of two hundred seventy-five thousand dollars ($275,000), or so much thereof as may be needed, is appropriated from any money in the state treasury not otherwise appropriated for payment by the state for the costs of the state's participation in federal flood control projects and for engineering connected with these projects including personal services and expenses. The money hereby appropriated shall be available for the cost of relocation and reconstruction of state highways, including structures; for channel improvements; for check dams; for quarries, gravel pits, spoil banks and borrow pits; for access roads; for camp sites; for relocation of buildings, structures and facilities; for relocation of the properties, structures, service lines and connections incident thereto of public service utilities, both publicly and privately owned; for rights of way and for other related purposes contemplated by and incidental to said flood control projects."

Additional appropriations were made by subsequent enactments.

The statute also provides (L. 1938, ch. 94, § 7, subd. 1) : " The superintendent of public works, for the people of the state of New York, shall acquire by appropriation any property or interest therein, necessary for purposes connected with the flood control projects. Such property or interest therein shall be for rights-of-way, channel improvements, reservoirs, dams, quarries, gravel pits, borrow pits, spoil banks, camp sites, relocation of buildings and facilities, relocation of the facilities of public service utilities, relocation of streets, sidewalks, public grounds, parks, cemeteries, water supply systems, sewer systems and lighting systems of municipal corporations; relocation of county roads and town highways; and for other purposes con-

nected with the flood control projects. The term ' property ' as used in this act is defined to include lands, waters, rights in lands or waters, structures, franchises and interests in land, including lands under water and riparian rights, and any and all other things and rights usually included within the said term, and includes also any and all interests in such property less than full title, such as easements permanent or temporary, rights-of-way, uses, leases, licenses and all other incorporeal hereditaments and every estate, interest or right legal or equitable.''

There also appears in the statute a provision giving the Court of Claims jurisdiction to hear and determine the claim of any owner for " property appropriated and for legal damages " (L. 1938, ch. 94, § 7, subd. 12) and an authorization for the superintendent of public works to adjust any claim even though a claim has been filed with this court (L. 1938, ch. 94, § 7, subd. 11). Either upon adjustment by the superintendent of public works or upon award and judgment of the Court of Claims the owner " shall be paid out of the state treasury from moneys appropriated for purposes connected with the flood control projects " (L. 1938, ch. 94, § 7, subd. 11).

We believe that by directly appropriating money for the express purpose, among others, of the " relocation of the properties, structures, service lines and connections incident thereto of public service utilities " and by defining " property " to include rights in lands, franchises, interests less than full title, easements, rights of way, uses, licenses and " all other incorporeal hereditaments ", the Legislature had in contemplation exactly a situation such as has arisen in the city of Binghamton in respect to this claimant.

We are mindful that in the *Westchester* case above cited (255 N. Y. 297, *supra*) the statute contained this language: " such persons or corporations shall not directly or indirectly be subject to expense, loss or damage by reason of change in such route or location, but such expense, loss or damage shall be borne in like manner as the expenses incurred in carrying out the provisions of this act.'' (L. 1922, ch. 292, § 5.)

The expense of carrying out the provisions of that act was to be met by the Westchester Board of Supervisors who were authorized to borrow money, issue bonds and levy taxes for payment. (L. 1922, ch. 292, §§ 19, 20.)

By chapter 862 of the Laws of 1936 the Legislature has appropriated the money to be paid out of the State treasury for the

purposes of the flood control project and one of the purposes particularly specified is the relocation of the structures and service lines of a privately owned public service utility. Claimant could not have been more certainly included if it had been identified by its corporate name. Awards are directed in the amounts stipulated as damages.

Decisions accordingly.